## SCHMIDT v. EMIGRANT INDUSTRIAL SAV. BANK.

### No. 273.

Circuit Court of Appeals, Second Circuit.

March 26, 1945.

Edwin A. Berkery, of New York City (John E. McAniff and Joseph A. Doran, both of New York City, of counsel), for appellant.

George Steier, of New York City (Charles R. Katz, of New York City, of counsel; Sidney S. Wolchok, of New York City, on the brief), for appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

**SWAN, Circuit Judge.**

The plaintiff was employed by the defendant as "superintendent" of its 12 story building at 229 West 36th Street in New York City. A substantial part of this building was occupied by tenants engaged in the production of goods for interstate commerce, and it is conceded that the plaintiff was entitled to recover $751.68, with interest, as overtime wages and liquidated damages, unless he is exempted from the coverage of the Fair Labor Standards Act by section 13 thereof, which declares that the wages and hours requirements shall not apply to "any employee employed in a bona fide executive * * * capacity," as that term is defined and delimited by regulations of the Administrator. 29 U.S.C.A. § 213. Finding as a fact that he was not a bona fide executive the district judge gave judgment for the plaintiff. Whether the evidence supports this finding is the sole issue presented by the defendant's appeal.

The Administrator's definition of the phrase "employee employed in a bona fide executive * * * capacity" is to be found in § 541.1 of the Rules and Regulations effective October 24, 1940,* 29 U.S.C.A. Appendix p. 625. It means any employee

"(a) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(b) who customarily and regularly directs the work of other employees therein, and

"(c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(d) who customarily and regularly exercises discretionary powers, and

"(e) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

"(f) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction: Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

■ This administrative definition is valid and controlling, Fanelli v. United States Gypsum Co., 2 Cir., 141 F.2d 216. To bring an employee within it the employer must show that each of the six subdivisions is satisfied, since they are conjunctive. Helliwell v. Haberman, 2 Cir., 140 F.2d 833; Smith v. Porter, 8 Cir., 143 F.2d 292.

The trial judge did not state explicitly which of the six conditions for exemption the plaintiff failed to meet; but the opinion seems to indicate that subdivisions (a) and (b) of the definition were particularly relied upon as a basis for the finding that the plaintiff was not a bona fide executive. Subdivision (a) requires that the employee's "primary duty" be managerial; subdivision (b) that he customarily and regularly direct the work of other employees. The trial court's inference that these conditions were not met is not so contrary to the evidence that we can hold it to be "clearly erroneous", as we must if it is to be reversed. Rule 52(a) F.R.C.P., 28 U.S.C.A. following § 723(c).

■ The plaintiff testified that his "main work in the building was to take care of small and minor repairs." On arrival at the building at 7:30 in the morning, he would put on overalls, oil the elevator machinery, inspect the contacts and renew them where necessary, inspect the sprinkler system and tighten loose valves, put new electric light bulbs, if required, in the toilets and on the stairway, and repair stopped toilets or sewer lines. It was also his work to clean the tops of the elevator cars and to clean soot out of the boilers when necessary. He changed window chains in the windows, took care of

---

* The period of employment involved in the case at bar is from November 3, 1938 to January 29, 1942. The Administrator's definition in effect before October 24, 1940 may be found in 29 Code Fed.Reg., Ch. 5, Pt. 541, 1938 Supp. The earlier definition does not differ substantially from the presently effective definition except with respect to participation in work of nonexempt character. As originally promulgated in October 1938 this portion of the definition read "who does no substantial amount of work of the same nature as that performed by nonexempt employees of the employer."

valves and vacuum traps in the radiators, repaired door checks and did the painting on the stairs and private hallways. There was no handy man employed to assist him. One day a week during the winter he fired the boilers. The character of his work, as he described it, supports the statement in the district court's opinion that "the plaintiff was a working superintendent with the menial tasks generally attributed to a janitor." It is true that in addition to the "superintendent" there were employed in the building four elevator operators, a relief elevator man, a porter, a night watchman and a fireman, and that the superintendent kept a time sheet and made out payroll sheets for these men. The cash or checks by which they were paid were procured from Spear & Co., the managing agent of the building. There is little evidence that the plaintiff exercised any real supervision over the other employees or customarily and regularly directed their work; he testified that if any of them asked to leave early he would tell them to get in touch with the office of the managing agent, whose employee, Mr. Keiler, was supervisor of maintenance of buildings of which Spear & Co. had charge as agent. Mr. Keiler visited the building once or twice a week. He was the plaintiff's "boss". If the plaintiff wanted to do any changing or anything new or to hire or discharge a man he had to take it up with Spear & Co. On the whole record we think the finding that the plaintiff was not employed in an executive capacity, as defined by the regulations, is supportable. Accordingly the judgment is affirmed with costs and an allowance of $50 for the appellee's attorney.