**WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. WOODBINE COAL CO. et al.**

District Court, E. D. Kentucky, London Division.

Nov. 7, 1945.

Archibald Cox, Associate Sol., U. S. Dept. of Labor of Washington, D. C., and Jeter S. Ray, Regional Atty., U. S. Dept. of Labor, and Glenn M. Elliott, Asst. to Regional Atty., U. S. Dept. of Labor, both of Nashville, Tenn., for plaintiff.

H. C. Gillis, of Williamsburg, Ky., for defendant Woodbine Coal Co.

Robert L. Smith, of Corbin, Ky., for defendant Woodbine Coal Co.

Hiram H. Owens, of Barbourville, Ky., for defendant E. E. Childers.

FORD, District Judge.

This action having been tried upon the facts without a jury, in conformity with Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the Court finds the facts specially and states separately as conclusions of law thereon as follows:

Findings of Fact.

1. The defendant, Woodbine Coal Company, is a corporation organized and existing under the laws of the Commonwealth of Kentucky having its principal office and place of business within the jurisdiction of

this Court. The defendant, E. E. Childers, is a resident of Woodbine, Whitley County, Kentucky, also within the jurisdiction of this Court.

2. The defendant, Woodbine Coal Company, is the lessee of coal lands in Knox County, Kentucky, which are owned by the Black Star Coal Company. The only known seam of coal on the 15,000 acre tract was worked out and abandoned some 20 years ago, but there still remain outcroppings, pillars, and stumps which the corporate defendant and its predecessors have exploited under leases from the Black Star Company. Substantially all this coal has been loaded at the corporate defendant's ramp and shipped via railway to West Knoxville, Tennessee.

3. In April, 1945, there were approximately 50 men working in the production of coal on the lease. Between 15 and 20 of the miners, including the defendant, E. E. Childers, held "contracts" with the corporate defendant in the following form:

"This Contract, made and entered into this ...... day of ......, 194.., by and between Woodbine Coal Company, party of the first part, and ......, party of the second part.

"Witnesseth: That Whereas the party of the first part is the lessee of certain coal in the North Jellico seam within the lands known as the Wilton Mining Properties in Knox County, Kentucky, owned by the Black Star Coal Corporation and leased by it to the party of the first part: and the party of the second part is an experienced mine contractor, it is hereby agreed by and between the parties hereto that the party of the second part, as an independent contractor, shall exclusively operate a mine in a portion of the said coal seam in and adjacent to an opening or entry known and designated as ......, and to mine and remove coal from rooms and territory adjacent to and connected with said entry. The work of the party of the second part in and adjacent to said entry shall not be done in such a way as to interfere with the mining or removal of coal from any other mine, entry or opening in said coal seam, or by any other person, and shall terminate whenever operations of the party of the second part approach the operations of any person in any other mine, entry or workings in such a way as to obstruct or interfere therewith.

"The party of the second part agrees that he will diligently operate said mine and mine said coal, and conduct all his mining operations in a skillful and workmanlike manner and so as to render it convenient to remove any and all coal which it is practicable to remove from said entry the rooms adjacent thereto, and so that no supports to the overlying structure will be removed except in places where such removal will not likely wrap up or cut off other coal which said supports are intended to protect, and agrees to operate said mine and conduct all said operations in accordance with the mining laws of the Commonwealth of Kentucky and to faithfully comply with and observe the national Fair Labor Standards Act [29 U.S.C.A. § 201 et seq.] and the federal Social Security Law [42 U.S. C.A. § 301 et seq.], and federal and state unemployment laws, the Victory tax law and Withholding tax law, and all other tax laws which now or may hereafter exist and be or become applicable to the operations of the party of the second part of his employment of miners and other employees, and that he will pay all taxes which may be assessed or become due under said, or any other, laws, on account of, or as a result of, the operations of the party of the second part, or the employment of workmen by him, and that he will keep all records and make all reports required by said laws and the rules and regulations pertaining thereto. The party of the second part agrees to employ and pay his own coal miners and other employees by means of a collective bargaining agreement between him and District 19, United Mine Workers of America, and to furnish and pay for all equipment and supplies necessary in the performance of said work, except that the party of the first part shall furnish timber out of which the party of the second part shall make necessary and proper mine timbers, props and ties for use in his operations. In operating said mine and doing said work, the party of the second part shall not be an employee or agent of the party of the first part, but an independent contractor, over whose work and employment, and the activities of whose employees, the party of the first part shall have and exercise no control.

"The party of the second part agrees that he will, and he does hereby, assume all liability and responsibility for any and all injuries or any death which may occur to himself or to any of his employees in the mining, transporting and delivery of said coal, and in the performance of any of

his duties under this contract, and will indemnify and hold the party of the first part harmless in respect and thereto.

"The party of the second part shall mine, transport and deliver all of the coal from said mine. to the party of the first part at the tipple belonging to the party of the first part at Woodbine, Whitley County, Kentucky, and shall have no right, title, or interest in any of said coal, and shall not sell or deliver any of said coal to anyone else. For all of the services, equipment and investment of the party of the second part in so mining, transporting and delivering. said coal, the party of the first part agrees to pay to the party of the second part the sum of '$— per ton by weights on scales of the party of the first part at Woodbine, Kentucky, payable each Saturday.

"It is further agreed by the parties hereto that if the party of the second part should fail to perform any of the duties or obligations imposed on him by this contract, the party of the first party may immediately cancel this contract by giving notice of his intention to do so to the party of the second part. In case market or other conditions render it impracticable for the party of the first part to market coal from said premises at a reasonable profit, he may terminate this contract by giving to the party of the second part ten (10) days notice of his intention to do so.

"Unless sooner terminated as set out above, this contract shall continue in force and effect to and including the ...... day of ......; 194.., and for such further and additional time as may then be agreed upon by the parties. Upon the termination of this contract, the party of the second part may remove from the premises all of his personal property and equipment which can be removed without injury to the mine or the future operation thereof.

"The party of the second part shall not transfer or assign any of his rights or duties under this contract to any other person without the written consent of the party of the first part.

"Given under our hands, this ...... day of ......, 194..

..........................
"Party of the First Part

..........................
"Party of the Second Part"

Other miners work with the contractors with the result that there were four or five men working in each opening mining and loading coal, "shooting," doing dead work, laying track, and so forth. The terms of the contract required the "independent contractor" to deliver all coal to the tipple, for which he was paid $2.10 per ton. The contract holder then distributes the money among the men working with him in accordance with the arrangements between them. For example, at the opening operated by the defendant, E. E. Childers, the $2.10 was distributed as follows: The men who performed the digging and loading received payment at the rate of $1.07½ per ton. These men supplied all their tools and equipment, did all the dead work (including making any new openings that were necessary), and paid the "shooting" expenses. In addition, Childers spent his time driving a mule which pulled the small cars out of the mine, a service for which he charged the men ten cents per car. The truckers were paid 80 to 90 cents per ton for loading, delivering, and unloading the coal at the tipple, and the remaining 12½ cents to 22½ cents went to Childers for the financial and managerial responsibilities incident to operating the mine opening under the contract.

4. The defendant, Woodbine Coal Company, does not directly supervise the work of the miners, does not determine what they are paid by the "independent contractors" and does not hire or fire any of the miners. It has caused periodic inspections to be made of the operations in the various openings by one of its salaried employees who discussed problems and gave the men "advice." By the simple expedient of regulating operations at the tipple, the defendant could control production at the mines and on occasions has shut down at the tipple, thereby forcing the miners to stop working as soon as the small bins or chutes at the mouth of the various openings were filled.

5. Defendants have failed to make, keep or preserve records as required by the Fair Labor Standards Act or as prescribed by the Regulations promulgated thereunder. The method of operation has resulted in noncompliance with the minimum wage provisions of the Act at least in weeks during which any substantial amount of deadwork was performed and in noncompliance with the overtime provisions of the Act in weeks in which more than forty (40) hours have been worked by the individual engaged in the enterprise.

6. Subsequently to the filing of the original complaint herein to wit, on August 1, 1945, the defendant, Woodbine Coal Company, entered into an arrangement with the defendant, E. E. Childers, whereby Woodbine "leased" its physical properties consisting of scales, a loading ramp, and side track to Childers for the consideration of twenty (20) cents per ton of coal removed from the leasehold and arranged for Childers to take over its lease with the Black Star Coal Company. Defendant Childers entered the enterprise with knowledge of the pendency of this action and the enterprise is being operated under contracts and in other respects substantially in the same manner heretofore outlined. The said defendant, E. E. Childers, intends to continue to operate it in the same way as an instrumentality of his co-defendant, Woodbine Coal Company, and has acted and continues to act, directly and indirectly, in the interest of the Woodbine Company in the operation of the business. By amendment to the complaint, Childers has been made a party defendant to this action.

## Conclusions of Law.

1. The Court has jurisdiction of the parties and the subject matter of this action.

■ 2. The broad language of the Fair Labor Standards Act's definition of the terms "employee" and "employer" and the legislative history of the Act leave no doubt that the technical legal relationship, which the common law recognized as the independent contractor relationship, is not controlling in the determination of the existence of the employer-employee relationship for the purposes of the Fair Labor Standards Act. Rather, the Act's applicability is to be determined broadly, in doubtful situations, by the underlying economic facts and not by previously established legal classifications. National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170; Walling v. American Needlecrafts, Inc., 6 Cir., 139 F.2d 60; Walling v. Merchants Police Service, Inc., D.C., 59 F.Supp. 873.

■ 3. Although the defendants in this case undertook to avoid the impact of the Fair Labor Standards Act by adopting the scheme of letting their employees become what, under some circumstances, might be regarded as an independent contractor relationship, the economic realities of the situation require the conclusion that not only the subordinate personnel but also the alleged independent contractors themselves are employees and within the protection of the provisions of the Fair Labor Standards Act.

■ 4. One who takes over the operation of an enterprise with notice of the pendency of a proceeding under Section 17 of the Fair Labor Standards Act will be bound by the terms of any injunctive decree that may be entered therein and may properly be made a party defendant to the proceeding.

5. Defendants are employers within the meaning of the Fair Labor Standards Act, and the defendant, Woodbine Coal Company, by paying employees less than the applicable minimum wage during certain workweeks and employing employees for workweeks in excess of forty (40) hours without compensating them at a rate not less than one and one-half times the regular rate at which they were employed, has violated sections 6, 7 and 15(a) (2) of the Act. Failure to maintain records required under the Act has resulted in violations of Sections 11(c) and 15(a) (5) of the Act and the shipment in commerce of goods produced in violation of sections 6 and 7 of the Act has resulted in violations of Section 15(a)(1) of the Act.

6. Plaintiff is entitled to the injunctive relief sought in this action.

Judgment may be entered in conformity herewith.