**WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. SOUTHWESTERN GREYHOUND LINES, Inc.**
**No. 472.**

District Court, W. D. Missouri, S. D.
March 27, 1946.

John A. Weiss, Jr., Wage & Hour Division, Department of Labor of Kansas City, Mo., for plaintiff.

Jesse M. Brown, of Forth Worth, Tex., for defendant.

RIDGE, District Judge.

Plaintiff brings this action, as the Administrator of the Wage and Hour Division, United States Department of Labor, to enjoin defendant from violating the provisions of Secs. 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. 201 et seq.

Defendant maintains and operates a bus depot in Carthage, Missouri, a city of approximately 10,000 population; said depot is maintained on a 24-hour service and is an integral part of defendant's business. It is typical of the usual and ordinary type of bus depot in the larger towns throughout the country. Fourteen buses arrive and depart therefrom daily. The defendant leases the property in which the depot is located, pays all rentals and furnishes and pays for all telephone and telegraph service, light, heat, power and water. Defendant carries public liability insurance against injury to persons or property on or about the premises and pays the personal property tax on all furnishings and equipment therein. The defendant furnishes all fixtures, paraphernalia and equipment essential to the operation of the depot. It prescribes and furnishes all tickets, accounting forms, deposit blanks, stationery and other office supplies for the selling of tickets and maintenance of records of the depot operations.

On June 19, 1937, defendant entered into the following agreement with one A. F. Sink, to act as terminal operator of its bus depot at Carthage, Missouri.

"As agreed June 18, the following arrangements will cover the operation of the new Carthage Depot by you, for Southwestern Greyhound Lines, Inc., said arrangements to apply from June 1st, 1937.

"Compensation of Terminal Operator

"You being Terminal Operator, will receive ten per cent (10%) commission on the gross combined sales of the Southwestern Greyhound Lines, Inc., and the Crown Coach Company, Inc.

"You will also use a reasonable portion of the waiting room as a restaurant, personally conducted by yourself, and receive the income from all concessions located in the waiting room and restaurant portion of the depot except the income derived from pay telephones and weight machines, and provided that we retain right of approval or disapproval on type of concessions installed.

"Expenses of Depot

"Southwestern Greyhound Lines, Inc., will pay the rental on this property and all other expenses such as utilities, rest room supplies, etc., except that no salaries will be paid over and above the commissions above outlined. Control of expenses outlined herein will be vested with Southwestern Greyhound Lines, Inc.

"Other Incomes

"All incomes derived from said station, such as—sub-rentals, commission on sales of

bus companies, other than Southwestern Greyhound Lines, Inc., and Crown Coach Company, Inc., taxi-cab stands, advertising, etc., shall accrue to Southwestern Greyhound Lines, Inc.

## "Reports

"The report of the sales of all Companies operating into and out of this Depot shall be made in full by agency draft direct to each company without commission deduction, in accordance with instructions from Southwestern Greyhound Lines, and Southwestern Greyhound Lines will remit to you by payroll check the total commission due you as set out herein, twice monthly to cover periods from the first to the fifteenth inclusive, and the sixteenth to the last inclusive of each month.

## "Term of Arrangements

"These arrangements are to be effective from June 1st, 1937, and cancel any and all preceeding (sic) arrangements in effect and shall continue on a month to month basis, providing, that no cancellation can be affected by either party without first giving thirty (30) days written notice to the other party hereto by registered United States Mail.

"If the contents herein is in accord with your understanding, kindly signify by signing in the space provided below."

Pursuant to said agreement the said Sink has been in control of defendant's bus depot at Carthage, Missouri, from June 19, 1937, to the present time. In the operation thereof Sink employs three other persons to aid in the performance of the duties incident to its operation. Sink, and said other employees, answer all inquiries of passengers and prospective passengers, sell tickets for both passengers and baggage on bus lines operating into and out of the depot, and prepare and keep all records and books as prescribed by defendant to reflect the status of defendant's business thereat. In performing said duties Sink, and the other employees, prepared two separate daily reports—one showing the daily sales of tickets with destination and amount of the individual ticket sales, including those for the Crown Coach Company which also uses said depot, and a second report which is a summary and remittance record, accounting to defendant for all monies received in the operation thereof. All monies received from the sale of tickets, whether for transportation of passengers or bag-gage, are deposited daily by Sink to defendant's credit, in a bank designated by defendant. Three times each month the defendant's District Passenger Agent checks all traffic schedules and makes recommendations for the conduct of the business of the depot. Once every ninety days defendant's auditor makes a complete and detailed audit of all books and records kept at the depot. Sink has no authority to deduct commissions from daily receipts, but deposits all monies to defendant's account. Control of expenses incurred in the operation of the depot is vested in defendant. Sink is paid bi-monthly an amount equal to 10% of the ticket sales made at the depot, less the deduction for his social security tax, withholding tax and war bonds. Sink pays the salary of the other employees working at the depot, from the bi-monthly remittances paid him in accordance with his agreement, and reports such salaries to defendant on a salary sheet form furnished by the defendant. Sink is bonded by defendant for the faithful accounting of all funds received at the depot, and defendant pays the premium for said bond.

It is admitted that defendant is engaged in interstate commerce within the meaning of the Fair Labor Standards Act; that A. F. Sink worked many and divers weeks in excess of 40 hours per week, for which he was not compensated for the hours worked in excess of 40, at a rate not less than one and one-half times his regular rate of compensation. It is further admitted that defendant keeps no record of the hours worked by Sink and the other employees at the depot. Mr. Sink, however, keeps a personal record of the hours worked by employees other than himself. Since September 1942, after an inspector of the Wage and Hour Division called upon Mr. Sink and after an investigation of the books and records kept at the depot, Mr. Sink, personally, has kept the records required by the Fair Labor Standards Act as to said other employees, and correct wages have been paid said other employees in accordance with said records and the provisions of the Fair Labor Standards Act. The compensation received by Mr. Sink from defendant since June 19, 1937 has been in excess of $30 per week, though no guaranteed basis of compensation is made to him.

From the foregoing facts petitioner contends that A. F. Sink, and those working under him at the Carthage Bus Depot of

defendant, are employees of defendant subject to the provisions of the Fair Labor Standards Act, supra. Defendant asserts that under its agreement with A. F. Sink he is a commission ticket agent for defendant and, as such, an independent contractor and not its employee; that if it is held that Sink is an employee of defendant, nevertheless he is employed in a bona fide executive capacity and within the exemption of Sec. 13 of the Act, 29, Sec. 213, U.S.C.A. In either event, defendant argues that it is not violating, nor threatening to violate, the provisions of the Fair Labor Standards Act; that the issues here presented are moot and the Administrator's prayer for injunction should be denied and the cause dismissed.

In determining whether Sink, and those working under him at said bus depot, are employees of defendant it should be kept in mind that the Fair Labor Standards Act was intended, by Congress, to be a "comprehensive coverage of employees" engaged in the interstate transportation of goods in commerce; that said Act is remedial and humanitarian in purpose and must not be interpreted or applied in a narrow grudging manner. United States v. Rosenwasser, 323 U.S. 360, 65 S.Ct. 295, 296; Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, etc., 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949.

From the facts above stated no conclusion can be reached other than that Sink is an employee of defendant and not an independent contractor. Notwithstanding the broad definition of an "employee" within the meaning of the Fair Labor Standards Act, under such facts, Sink is an employee of defendant even when measured by the standards of the common law. Under its contract with Sink defendant had the "right to control" Mr. Sink as to the details of the duties performed by him in the operation of its depot. Its District Passenger Agent and Auditor made recommendations and gave to Mr. Sink orders concerning the conduct of the business at the depot. In its contract defendant specifically retained "control of expenses" incurred in the operation thereof. Defendant provided the means by which Mr. Sink and the other employees at the depot perform their duties. The occupation, in which Mr. Sink and said other employees were engaged, was not distinct in character, separate and apart from defendant's general interstate business but was an integral and essential part thereof. The occupation of Mr. Sink was one that is usually performed by a Station Master and required no particular skill. Defendant furnished and supplied the instrumentalities and the place where such duties were performed. The method of paying Mr. Sink's compensation and the term of his employment were continuous. He was not paid by the job nor for specified duties; he was paid to operate the station in accordance with the usage and custom of defendant's public carrier business and all of his activities and duties, as well as those of the other employees at said depot, were amenable to the custom and control defendant exercised over its entire interstate business. Defendant's tariffs and its operating schedules were dependent, in part, on the duties performed by Mr. Sink and the other employees at said depot. Under such circumstances Mr. Sink is and was an employee of defendant under the common law. Skidmore v. Haggard, 341 Mo. 837, 110 S.W.2d 726; Barnes v. Real Silk Hosiery, 341 Mo. 563, 108 S.W.2d 58; State ex rel. Chapman v. Shain, 347 Mo. 308, 147 S.W.2d 457; Restatement of the Law of Agency, Vol. 1, p. 483. Mr. Sink, being an employee of defendant under common law standards determining that relationship, there can be no question that he is an employee of defendant within the meaning of the Fair Labor Standards Act. National Labor Relations Board v. Colten, 6 Cir., 105 F.2d 179; National Labor Relations Board v. Blount, 8 Cir., 131 F.2d 585; Southern Ry. Co. v. Black, 4 Cir., 127 F.2d 280. Under said Act an "employee" is defined to be "any individual employed by an employer." Sec. 3(e). " 'Employ' includes to suffer or permit to work." Sec. 3(g). In consequence of these broad definitions and the purpose of the Act, it is held:

"That all employees in interstate commerce, so far as reasonably possible, should be made subject to the provisions of the Act." Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, 56.

The rationale of this principle is that if the services rendered by an employee affect the movement of goods in interstate commerce it is presumed that Congress intended such services to come within the remedial provisions of the Act. Mr. Sink and the other employees at the station are not to be excluded from the provisions of the Act merely because Mr. Sink was paid on a commission basis, and, in turn, paid

the other employees at the depot out of the remittance made to him under his contract.

"The time or mode of compensation * * * does not control the determination of whether one is an employee within the meaning of the Act and no court is justified in reading in an exception based upon such a factor." United States v. Rosenwasser, supra.

Mr. Sink, and said other employees, were permitted to work and perform services for defendant that were an integral and essential part of defendant's interstate business. Consequently Mr. Sink, and said other employees of defendant are, within the meaning of the term "employee" as contained in the Fair Labor Standards Act, employees of defendant. Martino v. Michigan Window Cleaning Co., 66 S. Ct. 379; Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60.

■ The applicability of the Fair Labor Standards Act is to be determined by the underlying economic facts concerning the employment of an employee, and not by the niceties of legal classifications. National Labor Relations Board v. Hearst Publishing Co., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170. If the economic realities reveal that a person performs services for another, which are an integral and necessary part of the latter's interstate business, the conclusion is that the person so rendering such service is an employee within the meaning of the Fair Labor Standards Act, regardless of the contract terms under which such services are rendered. Tennessee Coal Co. v. Muscoda Local No. 123, 321 U.S. 590, 602, 64 S.Ct. 698, 88 L.Ed. 949; Walling v. American Needlecrafts, supra; Walling v. Woodbine Coal Co., D.C., 64 F.Supp. 82; Walling v. Atlantic Greyhound Corp., D.C., 61 F.Supp. 992.

■■ Having concluded that Mr. Sink is an employee of defendant, the question remains: Is Mr. Sink employed in a bona fide executive capacity by defendant and, therefore, exempt under Section 13 of the Act? The burden is upon the defendant to demonstrate that Mr. Sink is so exempt. Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616. The parties confine their respective contentions on this particular question to whether, or not, Mr. Sink is "compensated for his services on a salary basis at not less than $30 per week." Whether it is meant thereby that

he is receiving such amount from gross commissions, or from the net thereof, after the payment of salaries to other employees at said depot, is left in doubt by the record. The net amount retained by Mr. Sink from his gross commissions is not shown in the record. If the net amount so retained by him, plus social security and withholding tax, was less than $30 then (in view of the economic condition sought to be corrected by Congress as expressed in Sec. 2 of the Act in question), that would be a controlling factor in determining whether Mr. Sink was employed in a bona fide executive capacity, regardless of the amount of his gross commissions. Under such a situation his employment would not conform to the requirements of the Act. The evidence establishes that the depot is operated on a 24-hour basis. Mr. Sink now works 24 hours each week selling tickets and doing the same nature of work that is performed by the other three employees at the depot. It is reasonable to assume that if, because of economic stress, the gross amount of commissions paid to Mr. Sink by defendants would be insufficient to pay the salaries of the other employees, and a living wage to Mr. Sink, he would take over one of the regular 8-hour shifts, in the 24-hour operation of said station. If he did so, then, under the regulations of the Administrator, defining and delimiting the terms contained in the Act, Mr. Sink would not be an employee employed in a bona fide executive capacity. As it is, he is now performing hours of work, of the same nature as those performed by non-exempt employees, in excess of 20% of the number of hours worked in a work week by non-exempt employees under his direction.

■ However, the determination whether Mr. Sink is an employee employed in a bona fide executive capacity, as that term is defined and delimited by Sec. 541.1 of the regulations issued by the Administrator of the Wage and Hour Division of the Department of Labor, pursuant to the authority vested in the Administrator by Sec. 13(a) (1) of the Act, is not wholly dependent on the amount of compensation paid to Mr. Sink or the number of hours now worked by him, during which he performs the same duties as are performed by non-exempt employees. The regulations provide six separate qualifications for determining the executive capacity of an employee. If the evidence falls short of proving that an employee comes within any

one of said qualifications the exemption does not exist. Schmidt v. Emigrant Industrial Sav. Bank, 2 Cir., 148 F.2d 294. One of said qualifications is that the employee be authorized "to hire or fire other employees or whose suggestions and recommendations as to hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight." Sec. 541.1(c). Another qualification is that he must be an employee "who customarily and regularly exercises discretionary powers." Sec. 541.1 (d). Keeping in mind that up to the time of the filing of this action, defendant contended that Mr. Sink was an independent contractor and that it now contends that any employees working at the depot, in carrying on the operation of the defendant's business thereat, are employees of Mr. Sink, and not of defendant, the record is silent as to any authority in Mr. Sink to enter into a contract with any person as an employee of defendant, or that his recommendation in that respect would be given any consideration whatsoever by defendant. Defendant was in error in making the assumption that Mr. Sink was an independent contractor either under the common law or under the Act in question. In making the contention that if Mr. Sink is not held to be an independent contractor, then he is an employee employed in an executive capacity and exempt from the Act, the defendant does not make any showing that, under such contingency, Mr. Sink would be authorized to hire or fire any employee of the defendant, or that his recommendation, in relation thereto, would be given consideration. Neither does defendant ratify or accept the other three employees at said station, as its employees, in making that contention. In other words Mr. Sink, having been determined to be an employee of defendant the record, as it now stands, is wholly silent as to what authority Mr. Sink actually has as an employee of defendant. Likewise the record is silent as to any discretionary powers Mr. Sink would be authorized to exercise as an employee of defendant. An answer to the above propositions must be determined from the record as it now stands. From the record in this case the conclusion is that Mr. Sink, acting as Terminal Operator, has no discretionary powers as an employee of defendant. The schedules of the arrival and departure of busses at the station are fixed by defendant. Mr. Sink exercises no discretion with reference thereto. The mode and price of the sale of tickets at the depot is fixed by the tariffs of defendant; Mr. Sink has no discretion relative thereto. The cost of operating the depot is vested in the defendant. The administrative acts essential to the operation of the depot are dictated by defendant. The only discretion that Mr. Sink has relative to the operation of said depot, as the instant record stands, is as to the number of hours he, personally, works in the depot selling tickets and giving out information relative to the arrival and departure of busses, and as to whom he will solicit business from, for defendant. Under such a situation he merely performs ministerial duties outlined for him by defendant in the operation of that part of its interstate business without any discretion, on his part, as to how such duties shall be performed.

In light of the foregoing, the conclusion is that Mr. Sink is not an employee of defendant employed in a bona fide executive capacity and, therefore, exempt from the provisions of the Fair Labor Standards Act.

The evidence in this case conclusively establishes that the defendant does not keep any records as to the number of hours worked by Mr. Sink and the other employees at its bus depot at Carthage, Missouri, as required by Section 11(c) of the Fair Labor Standards Act. It is admitted that Mr. Sink, worked many and divers weeks in excess of 40 hours, for which he was not compensated in accordance with Section 7(a) (3) of said Act. The question now before the Court is not moot. Plaintiff is entitled to a decree enjoining the defendant from violating the provisions of the Fair Labor Standards Act, as prayed in plaintiff's petition.

It is so ordered.