James P. MITCHELL, Secretary of Labor, United States Department of Labor,

v.

RAILWAY EXPRESS AGENCY, Incorporated.

Civ. A. No. 1079.

United States District Court
D. Maine, S. D.
April 3, 1958.

Stuart Rothman, Sol., U. S. Dept. of Labor, Washington, D. C., Thomas L. Thistle, Regional Atty., U. S. Dept. of Labor, Boston, Mass., for plaintiff.

Frank M. Coffin, John A. Mitchell, Portland, Me., for defendant.

ALDRICH, District Judge.

This is a suit to enforce the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The defendant is an express company engaged in the transportation in interstate commerce of sundry articles by railway, with pick-up and delivery service at each end. The action seeks an injunction to order the proper keeping of records by, and the payment of the minimum wage to, certain employees, or alleged employees, of the defendant in the state of Maine. Before considering the merits I think it well to review the course of the action since its institution. The complaint was filed in May, 1954; the answer in July. The first pretrial conference was held in March, 1955, a second in May. A three-day trial was had in November before Judge Clifford, now deceased. In February, 1956 the defendant moved to reopen to introduce further evidence. In lieu of reopening, a stipulation was filed in April. Nothing further occurred until Judge Gignoux, in January, 1958, shortly after his appointment as Judge Clifford's successor, recused himself because of prior connection with counsel. By agree-

ment of the parties the case was submitted to me on the record and briefs, on March 19. I go into this history as it has, with the exception of Judge Gignoux' disqualification, some possible bearing on the question of an injunction.

Besides reading the briefs, I have, of course, read the transcript, disregarding Judge Clifford's occasional notes. Although some infrequent reluctance is exhibited by counsel to accept all of the testimony, there is really very little essential dispute as to the facts, but only as to conclusions which should be reached therefrom. The defendant operates a railway express on a national scope. Its business is piecework, rather than bulk. An essential part of its organization, accordingly, are its local representatives, or agents, who service shipping and receiving customers. These agents are classified by the company as salaried, exclusive commission, merchant commission, and joint. In the present case we are concerned only with the middle two. The defendant admits that exclusive agents are employees within the meaning of the Act, but contends that merchant agents are independent contractors.

In theory an exclusive commission agent works full time for the company, at hours fixed by it, and subject to its full orders and control, while a merchant commission agent has an outside occupation, works part time, fixes his own hours, and is subject to minimum control. The exclusive agent belongs to a union, and has certain benefits of seniority, a right to bid on jobs, union representation and hearing before discharge, and paid vacations, all of which the merchant agent has not. Actually these differences based on union membership are not as marked as would appear. Because the merchant agent has outside employment, the right to bid on some other locality, or, seemingly, to take a vacation, does not have much attraction. If there are problems as to discharge, the record does not indicate them; a merchant agency appears to be a steady job. In fact, in most instances the similarity between exclusive and merchant agents is far more significant than the difference. Indeed, when one agent was changed from exclusive to merchant, he was not aware of it. The basis of pay—commissions only—is the same. Damage claims are in both cases assumed by the company. All procedures are the same; including the filling out of various company-supplied forms. Written rules and instructions cover every detail of the work, to the extent of leaving no question undecided. Both types of agents are subject to audit, and are visited equally by supervisors. Both are free to hire helpers, at their own expense. Each owns his own truck, and maintains an office, for which he pays rent, unless it is on his own premises. It is true as to this that defendant states that it decides where the office of the exclusive agent will be, and the color it is to be painted, while the merchant agent makes his own decision. In practice I do not find these office details a matter of consequence, except in one special instance, to be later considered. In point of fact the interest of the agent and of the company normally coincide.

Furthermore, in practice the observance of the differences which defendant contends to be fundamental is not uniform. An exclusive agent may, in fact, have an outside occupation, provided that it does not interfere with his work for the defendant. Conversely, a merchant agent might not, in fact, have any outside occupation. The most substantial distinction between a merchant agent and an exclusive agent is the matter of hours. The merchant agent normally lives in a community where there is less activity. The defendant accordingly does not need, and therefore does not choose to exercise, any special control over his time; the theory being that since he is on commission he may be counted on to be his own overseer in this respect. Moreover, his time is fairly well fixed by the daily train schedules, which render, in effect, an automatic supervision.

■■ All courts now agree that the over-all situation is what controls, rather than isolated characteristics. E. g.,

Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772, rehearing denied 332 U.S. 785, 68 S.Ct. 29, 92 L.Ed. 368; Western Union Tel. Co. v. McComb, 6 Cir., 165 F.2d 65, certiorari denied 333 U.S. 862, 68 S.Ct. 743, 92 L. Ed. 1141. In substance, I find the merchant agent is but little more, or less, than an exclusive agent who works less hours because of less volume of work. The number of hours is not a matter of consequence. Even this difference between exclusive and merchant agents does not always prevail. The tenuousness of defendant's position is illustrated by agent Hobbs, who operates two agencies at two adjoining depots, Waldoboro and Newcastle, and is classified as a merchant. It is true that each agency by itself is a part time position, but in filling two, Hobbs works nine hours a day and a 5½-day week. He gave up all outside occupation, an alleged determinative characteristic of the merchant agent. To say he differs from an exclusive agent disregards all reality.[1]

■ Defendant argues at length that if merchant agents are to be regarded as employees within the Act, such agencies may have to be closed altogether, because they cannot support the minimum wage. This argument is hoary with age. I could not be affected by it even if the record supported it, which I find it does not.[2] The company can regulate the hours, or pay necessary additional compensation, or close up. If it has to do the latter, this is the affair of Congress, not of the court.

■■ There is one individual somewhat troublesome situation. The mer-

chant agent in Guilford operates a store, which is open, I assume, all day. His work for the defendant takes about 5% of his time, and his compensation is proportionate. Unlike other merchant agents, he has no separate office or employees for defendant's work, and does much of it at no specific time. The defendant's argument for regarding this agent as not being an employee might, standing alone, be more persuasive than with respect to the others. However, hard cases must not be permitted to make bad law, and I believe I should regard the dog as a whole, and not the tail as a separate unit. If too fine distinctions are made, soon the appendage would be wagging the body. I cannot recognize any distinction merely because the application of the Act, and the payment of the required minimum wage, will be procedurally more difficult. See Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60. On the contrary, I believe all merchant agents must be treated alike, because the similarities are more fundamental than the differences.

The defendant, as already stated, admits that its exclusive commission agents are subject to the Act. The petitioner also asks an injunction as to them, however, claiming that defendant is not maintaining adequate records, and is not paying them the minimum wage. With respect to the former it is admitted that the reports show only the monthly hours, at least at the date of suit. This is a failure to comply with regulations, which require not only weekly, but daily records. 29 C.F.R. § 516.2(a) (7). The defendant in 1938 was apparently relieved

---

1. It is true, as defendant suggests, that the practice of classifying exclusive agents and merchant agents separately antedates the passage of the Act, and does have certain reasons from an administrative standpoint. It is not necessary to find that the separate classifications were adopted in order to circumvent the Act, and I do not pursue the question of whether particular individuals were classified for this purpose. The test is what, if anything, the classification accomplished, and not why it was ef-

fected. See Fleming v. Palmer, 1 Cir., 123 F.2d 749, 759, certiorari denied Caribbean Embroidery Co-op. v. Fleming, 316 U.S. 662, 62 S.Ct. 942, 86 L.Ed. 1739.

2. Defendant's general manager made such a generalization at one point. However, at another stage he testified he believed merchant agents were in fact earning the minimum wage. This is a poor testimonial basis on which to threaten a court that its decision would put people out of business.

by the Administrator of such compliance, and never since notified to the contrary. Obviously such relief is revocable.

It also appears that, to some extent at least, exclusive agents, though notified to keep track of their actual hours, have been somewhat lax in the matter of accuracy, and have even taken the position that since they work on commission, any extra hours they may work is their own affair. I can quite understand that an agent might choose to "chew the fat" when people were around during regular hours, and then come back after hours and do paper work. Because such may have occurred in 1954 or 1955, however, does not seem to me to warrant such comparatively drastic relief as an injunction in 1958. At this time I make the following determinations, by way of declaratory relief.

1. All merchant agents, so-called, in the state of Maine are employees within the meaning of the Act.

2. If, for any period since January 1, 1958, the defendant has not been keeping accurate monthly records of the hours of exclusive agents, or paying such agents the minimum wage; or if, for any period beginning June 1, 1958, a) the defendant does not pay merchant agents the minimum wage, or b) keep records, as to both merchant and exclusive agents, in accordance with all current regulations; the petitioner may apply for an injunction, at any time not later than December 30, 1958, and in the meantime may make such further investigation as to defendant's affairs as may be needed for such purpose.

3. The court will retain jurisdiction until at least December 31, 1958, for such further orders as may be appropriate. Since there may be some question as to whether or not the above decision is an appealable judgment, if defendant desires to appeal, it will so notify me not later than May 1, 1958, and I will enter an injunction in order to eliminate any such possibility.

