Anthony J. CASERTA, Plaintiff-Appellee,

v.

HOME LINES AGENCY, INC., Defendant-Appellant.

No. 111, Docket 25720.

United States Court of Appeals
Second Circuit.

Argued Nov. 17, 1959.

Decided Dec. 14, 1959.

**944**

Arthur B. Sheehan, New York, New York, for plaintiff-appellee.

Horace M. Gray, New York City (James A. Stevenson and Gray & Wythe, New York City, on the brief), for defendant-appellant.

Harold C. Nystrom, Acting Solicitor of Labor, Bessie Margolin, Asst. Solicitor, Jacob I. Karro, and Benson Tomlinson, Washington, D. C. and John A. Hughes, New York City, on brief for James P. Mitchell, Secretary of Labor, United States Department of Labor, as amicus curiae.

Before MAGRUDER, MEDINA and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

This is an appeal by defendant Home Lines Agency, Inc. from a judgment entered in an action in the Southern District of New York, wherein plaintiff Caserta sought to recover overtime wages, liquidated damages, and counsel fees pursuant to the Fair Labor Standards Act of 1938 as amended, 29 U.S.C.A. §§ 207 and 216. The case was tried to Judge Levet without a jury. The Court entered judgment awarding Caserta $1,730.32 in overtime wages, $1,730.32 as liquidated damages, $600.00 in counsel fees, and costs. Defendant challenges the Court's findings that Caserta came within the coverage of the Fair Labor Standards Act. It contends further that Caserta is barred by estoppel and the parol evidence rule from claiming overtime pay for time not shown on his time sheets. Finally, question is raised as to the award of liquidated damages even if the judgment for overtime pay is sustained. Finding no merit in any of appellant's contentions, we affirm the judgment.

During plaintiff's employment appellant was the principal passenger agent in the United States for Home Lines, Lauro Lines and National Hellenic American Line, and was a passenger ticket agent for Incres-Nassau Line. All of these were foreign steamship corporations engaged in the transportation of passengers between the United States and foreign countries. In the conduct of this agency business appellant maintained a main office in New York City

and branch offices in six cities in other states. Appellant promoted the business of the steamship lines for which it was general agent by supplying its branch offices and travel agents throughout the United States and Canada with tickets, sailing lists, rate sheets, tags, labels, and promotional material of various sorts. Some of this material was printed in New York; some was printed by the principals in Europe and shipped by them to appellant's New York office. Appellant distributed a substantial part of this material by use of the United States mails. For its services it received a commission both on sales made by its own offices and on sales made by travel agencies throughout the United States and Canada.

Caserta was in appellant's employ from January 31, 1955 to March 3, 1957. He divided his working time between driving the Agency's station wagon and limousine about New York City and occasionally in New Jersey on a variety of errands and acting as mail and shipping clerk in the New York office. In the latter capacity he prepared the material described above for distribution through the mails and otherwise.

Caserta's duties required him to go each morning to a garage in Brooklyn to pick up one of the Agency's cars. Sometimes he drove the car directly to the office at 42 Broadway. On other occasions he drove there via the Beverly Hotel at Lexington Avenue and 50th Street where he would call for the Agency's vice-president. In the evening he drove the car back to the garage and supervised its servicing.

Appellant delegated to Caserta the duty of keeping time sheets showing the hours that he worked; it kept no independent record of his time. Appellant paid Caserta for all time and overtime shown on the time sheets. However, Caserta testified and the Court found that his time sheets did not include the time spent (1) in driving from the garage in the morning to the Beverly Hotel on days when he took that route or to the office on days when he went direct,

(2) in driving from the office to the garage in the evening, or (3) in supervising the servicing of the car. All this would have been overtime. Caserta also testified that on two occasions he had complained to the manager of the Agency's supply department and on one occasion to the manager of passenger sales, who approved his time sheets, that he was not being paid for the time described above. He placed these conversations in July or August, 1956; appellant's witnesses denied them. On the basis of certain stipulations and Caserta's time sheets, Judge Levet made computations of the hours and dollars of Caserta's uncompensated overtime, arriving at a figure of $1,730.32. He also found:

> "17. The defendant has not shown to the satisfaction of the court that the omissions in compensation of plaintiff giving rise to this action were in good faith. Defendant, in my opinion, knew that plaintiff was working additional overtime not reflected in his time sheets. Plaintiff is, therefore, entitled to an additional sum of $1,730.32 as liquidated damages. 29 U.S.C.A. § 216 (b)." [172 F.Supp. 413.]

■ (1) Appellant's contention that Caserta may not recover for overtime under section 7 of the Fair Labor Standards Act, 29 U.S.C.A. § 207, because he was not an employee "engaged in commerce or in the production of goods for commerce" ignores realities.

The Act defines "commerce" to include "transportation * * * among the several States or between any State and any place outside thereof," 29 U.S. C.A. § 203(b). Persons are "engaged in commerce" not just when they sail ships, run locomotives or pilot airplanes but also when they perform tasks essential to the conduct of a transportation system and not so remotely connected with it as to be regarded as local in nature. It would be hard to think of activities outside physical operation more essential to a foreign steamship service than informing prospective passengers of the availability and times of the serv-

ice and providing them with the reservations and transportation contracts needed for their travel. Surely no one would question that an employee of a steamship company engaged in selling tickets to foreign destinations at its own office is "engaged in commerce." See Walling v. Southwestern Greyhound Lines, Inc., D.C.W.D.Mo.1946, 65 F.Supp. 52; Mitchell v. Railway Express Agency, Inc., D.C.D. Me.1958, 160 F.Supp. 628. Cf. Republic Pictures Corp. v. Kappler, 8 Cir., 1945, 151 F.2d 543, 162 A.L.R. 228 affirmed 1946, 327 U.S. 757, 66 S.Ct. 523, 90 L. Ed. 991. It is of no consequence that plaintiff was not himself a ticket seller; the steamship company employee who gets the tickets to the counter is just as much "engaged in commerce" as the clerk who passes them across. Cf. Mitchell v. Lublin, McGaughy & Associates, 1959, 358 U.S. 207, 212, 79 S.Ct. 260, 3 L.Ed. 2d 243. Neither is it of consequence that plaintiff was not in the direct employ of the steamship companies. The test is what plaintiff did, not for what corporate entity he did it—at least where, as here, no claim can be made that the identity of the employer brings the case within one of the exemptions provided in 29 U.S.C.A. § 213. See Airlines Transportation, Inc. v. Tobin, 4 Cir., 1952, 198 F.2d 249. From a practical standpoint the Agency was the United States sales branch of its principals. Indeed, it was stipulated that all the sales of appellant's principals in the United States were made by appellant or by agents whom it supervised.

Holding, as we do, that Caserta was engaged in commerce because he was engaged in foreign transportation, we do not need to consider the contentions, advanced by the Secretary of Labor as *amicus curiae*, that Caserta also was engaged in commerce because he transmitted materials across state lines, and that he was engaged in "the production of goods for commerce" because of these same activities.

■ (2) Appellant's contentions that plaintiff is precluded from challenging his own time sheets by estoppel and the parol evidence rule are inconsistent with both the language and the policy of the Fair Labor Standards Act.

29 U.S.C.A. § 207(a) made it unlawful for appellant to employ plaintiff "for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." The obligation is the employer's and it is absolute. He cannot discharge it by attempting to transfer his statutory burdens of accurate record keeping, 29 U.S.C.A. § 211 (c), and of appropriate payment, to the employee. The employer "at its peril, * * * had to keep track of the amount of overtime worked by those of its employees in fact within the Act." George Lawley & Son Corp. v. South, 1 Cir., 140 F.2d 439, 442, certiorari denied 1944, 322 U.S. 746, 64 S.Ct. 1156, 88 L.Ed. 1578.

■ Appellant's argument of estoppel ignores that this case lies in an area where agreements and other acts that would normally have controlling legal significance are overcome by Congressional policy. An agreement by appellee not to claim overtime pay for the work here in question would be no defense to his later demanding it. Overnight Motor Transp. Co. v. Missel, 1942, 316 U.S. 572, 577, 62 S.Ct. 1216, 86 L.Ed. 1682. Similarly, an express release by the employee is invalid, and this even though the release is limited to the claims for liquidated damages and was made in settlement of a *bona fide* dispute, D. A. Schulte, Inc. v. Gangi, 1946, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114. Surely acts by an employee leading the employer to believe he is satisfied with the payments being made to him, even if we could find these here, could not have greater effect than a contract to that end. On precisely this basis we held, in De Pasquale v. Williams-Bauer Corp., 1945, 151 F.2d 578, certiorari denied 1946, 328 U.S. 836, 66 S.Ct. 1007, 90 L.Ed. 1612, that employees' weekly receipt of accounts stated without complaint did not estop them from

recovering overtime compensation and liquidated damages. See Robertson v. Alaska Juneau Gold Mining Co., 9 Cir., 1946, 157 F.2d 876, 879, certiorari denied 1947, 331 U.S. 823, 67 S.Ct. 1314, 91 L. Ed. 1839. The First Circuit has held that even when the very person charged with the duty of maintaining records failed to make current claims for overtime because he was not believed subject to the Act, he was not estopped from later recovery. George Lawley & Son Corp. v. South, supra. To be sure, that decision was by a divided court, but the facts in favor of the defendant were far stronger than here.

■ Appellant's claim that the parol evidence rule prevents appellee's showing the true facts is equally unfounded. The rule applies only to "jural acts," not to unilateral reports. 9 Wigmore on Evidence, §§ 2401, 2404; see, e. g., Komp v. Raymond, 1903, 175 N.Y. 102, 67 N.E. 113 (parol evidence rule inapplicable to receipts). Moreover, it has been held that even a recital in a lease, clearly a "jural act," does not preclude a party from challenging the verity of the recital in a statutory cause of action that would be barred if the recital were true. Popplewell v. Stevenson, 10 Cir., 1949, 176 F.2d 362. Cf. De Ronde v. Gaytime Shops, Inc., 2 Cir., 1956, 239 F.2d 735, 739.

■ (3) The remaining question is whether, assuming that Caserta was thus entitled to recover his unpaid overtime compensation, the District Court was justified in also awarding him liquidated damages. 29 U.S.C.A. § 260, added by the Portal-to-Portal Pay Act of May 14, 1947, ch. 52, § 11, 61 Stat. 89, provides, with respect to failure to pay minimum wages or overtime, that

" * * * if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation * * * the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216(b) of this title."

It was suggested at the argument that Caserta's submission of erroneous time sheets should at least have excused appellant from liquidated damages, or, in any event, should so excuse appellant for the period before Caserta even claimed to have put it on notice as to the inadequacy of his time records. On this aspect of the case also we find no basis for disturbing the judgment of the District Court.

The Supreme Court has said that "The liquidated damages for failure to pay the minimum wages under sections 6(a) and 7(a), are compensation, not a penalty or punishment by the Government. * * * The retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages." Overnight Motor Transp. Co. v. Missel, supra, 316 U.S. at pages 583–584, 62 S. Ct. at page 1223. See Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, at pages 707–708, 65 S.Ct. 895, at page 902, 89 L.Ed. 1296. Although the 1947 amendment permits the district courts to grant dispensation from the payment of liquidated damages, the statute imposes "upon the delinquent employer who would escape the payment of liquidated damages a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." Rothman v. Publicker Industries, 3 Cir., 1953, 201 F.2d 618, 620. And it has been properly said that "This inquiry is committed to the 'sound discretion' of the trial court, a decision which we would alter only on most compelling circumstances." Reed v. Murphy, 5 Cir., 232 F.2d 668, 678, certiorari denied 1956, 352 U.S. 831, 77 S.Ct. 45, 1 L.Ed.2d 51.

Here we find no such "compelling circumstances" as the Court found in Reed

v. Murphy. We do not have here a case where the proof conclusively showed that the employer had no means of knowing of its error before suit was brought. Plaintiff testified he had placed defendant on notice eight or nine months before his employment ended. While defendant's witnesses denied this, Judge Levet evidently chose to believe the plaintiff. We cannot say he was wrong. It was within the discretion of the District Judge to hold that once defendant was placed on notice of the deficiency in overtime pay defendant no longer had "reasonable grounds for believing" it had made proper payment for the past.

Counsel for plaintiff is allowed an additional $150 for his services on this appeal. See Aaron v. Bay Ridge Operating Co., 2 Cir., 1947, 162 F.2d 665, 670, modified and affirmed 1948, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502.

With this modification the judgment is affirmed.