[628 NYS2d 971]

In the Matter of RICHARD BRUNO, Appellant, v PEMBROOK
MANAGEMENT, INC., et al., Respondents.

Second Department, July 10, 1995

### APPEARANCES OF COUNSEL

*Terrence Ryan,* Suffern *(Thomas N. O'Hara* of counsel), for appellant.

*Kelley, Drye & Warren,* New York City *(Kenneth Kirschner, Barbara Marden* and *Charles M. Mattingly* of counsel), for Pembrook Management, Inc. and another, respondents.

### OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is whether refusing to lease commercial space to a tenant, on the ground that the tenant intends to erect a religious display in the space, constitutes an unlawful discriminatory practice in violation of Executive Law § 296 (5) (b). We hold that it does not.

#### THE FACTS

Every Christmas season from 1978 through 1984, the petitioner rented space in the Nanuet Mall to display a Christmas Nativity scene in conjunction with a fireplace promotion. However, by letter dated November 12, 1985, Pembrook Management, Inc. (hereinafter Pembrook), the managing agent of the Nanuet Mall, advised the petitioner that his "contract for the 1985 display will not be renewed". Pembrook, on behalf of Corporate Property Investors, the owner of the mall, had decided that, "for business purposes i[t] did not wish to have religious symbolism" in the mall. Pembrook issued the following statement of the reasons for its decision: "It is improper for any of our twenty commercial shopping centers to capitalize on or hide behind the display of religious symbolism during this special time of year. We are doing this out of our deep respect for religious beliefs and the need to keep the commercial aspects of Christmas out of religion. It is appropriate that these symbols be displayed at home, at churches or synagogues or at other non-commercial public places".

After Pembrook's policy decision prompted a public outcry, Pembrook allowed the petitioner to erect a Nativity scene at the Nanuet Mall, in space provided rent free. Pembrook agreed that in subsequent years, "representatives of the

Church as well as the Jewish community would be afforded space at the Mall but the Creche and Menorah * * * would not be tainted with commercialism but would be purely religious symbolism".

In January 1986, the petitioner filed a complaint with the New York State Division of Human Rights (hereinafter the Division), charging Pembrook and Corporate Property Investors "with discrimination by denying me the right to rent commercial space".

By determination dated January 20, 1989, the Division dismissed the complaint, finding: "The display of a religious scene does not constitute a 'Business or Profession' as required by the definition of Commercial space found in Section 292.13 of the New York State Human Rights Law."

The Supreme Court, Rockland County (Meehan, J.), annulled that determination, finding that "[s]pace available for rent within a shopping mall is undoubtedly commercial space within the meaning" of Executive Law § 292 (13). On appeal, the case was transferred to the Appellate Division, Third Department, which held: "[P]etitioner used the space not only to display the nativity scene but also to promote his fireplace business * * * the fireplace display is not merely incidental but, in our view, clearly brings the intended use within the statutory definition of commercial space" *(Matter of Bruno v Pembrooke Mgt.,* 167 AD2d 754, 755).

Upon remittitur, the Division found that there was no probable cause to believe that Pembrook and Corporate Property Investors engaged in an unlawful discriminatory practice, for the following reasons: "It appears that the respondent's *[sic]* denial of the renewal of the contract did not discriminate against the complainant's creed. In fact, the record shows that the respondents did not have any knowledge of the complainant's personal religious beliefs and practices. Thus, complainant was using the creche of a Christmas religious display for the purpose of a fireplace promotion. Moreover, respondents decision not to place religious symbols in the Nanuet Mall, was not directed solely toward complainant, but rather affected the Jewish faith by also having them remove their Menorah".

The Supreme Court, Rockland County (Weiner, J.), found that that determination was not arbitrary and capricious or lacking a rational basis. This appeal ensued.

THE HUMAN RIGHTS LAW

Executive Law § 296 (5) (b) states, in pertinent part:

"(b) It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, or managing agent of, or other person having the right of ownership or possession of or the right to sell, rent or lease, land or commercial space:

"(1) To refuse to sell, rent, lease or otherwise deny to or withhold from any person or group of persons land or commercial space because of the race, creed, color, national origin, sex, age, or disability or marital status of such person or persons.

"(2) To discriminate against any person because of his race, creed, color, national origin, sex, age, or disability or marital status in the terms, conditions or privileges of the sale, rental or lease of any such land or commercial space; or in the furnishing of facilities or services in connection therewith".

"Commercial space" is defined in Executive Law § 292 (13) as: "any space in a building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied for the manufacture, sale, resale, processing, reprocessing, displaying, storing, handling, garaging or distribution of personal property; and any space which is used or occupied, or is intended, arranged or designed to be used or occupied as a separate business or professional unit or office in any building, structure or portion thereof".

These provisions of the article known as the "Human Rights Law" (Executive Law § 290 [1]) were enacted in 1961 (see, L 1961, ch 414, §§ 3, 4), as "a further step toward the goal of assuring that every person in this State may live or work where his heart desires and his means or abilities permit" (1961 NY Legis Ann, at 441). As this Court held in *Board of Educ. v New York State Div. of Human Rights* (42 AD2d 49, 52, *affd* 35 NY2d 673 [on opn of Hopkins, J., at App Div]): "Though in a sense the equal protection clause deals with classes, the Human Rights Law in contrast deals with individuals. The statute in essence prevents disparate treatment of individuals".

The purposes of the Human Rights Law are set forth in Executive Law § 290 (3), which states: "3. The legislature hereby finds and declares that the state has the responsibility to act to assure that every *individual* within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity,

whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants. A division in the executive department is hereby created to encourage programs designed to insure that every *individual* shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the state; to encourage and promote the development and execution by all persons within the state of such state programs; to eliminate and prevent discrimination in employment, in places of public accommodation, resort or amusement, in educational institutions, in public services, in housing accommodations, in commercial space and in credit transactions and to take other actions against discrimination as herein provided; and the division established hereunder is hereby given general jurisdiction and power for such purposes." (Emphasis supplied.)

The plain language of Executive Law § 296 (5) (b) and statements as to its purpose indicate that that provision is directed at discrimination against *individuals, inter alia,* because of their religion. The Court of Appeals noted in *Koerner v State of New York, Pilgrim Psychiatric Ctr.* (62 NY2d 442, 448), that "the elimination of discrimination in the provision of *basic opportunities* is the predominant purpose of this legislation" (emphasis supplied).

In the instant case, the Division found that the refusal to renew the petitioner's lease "did not discriminate against [his] creed". It is well settled that a determination by the Division to dismiss a complaint, based upon a finding that probable cause is lacking, will not be annulled unless it is arbitrary and capricious *(see, e.g., State Off. of Drug Abuse Servs. v State Human Rights Appeal Bd.,* 48 NY2d 276, 284; *Matter of Sidoti v New York State Div. of Human Rights,* 212 AD2d 537). Further, the Division is afforded "considerable deference * * * because of its expertise in evaluating discrimination claims" *(Matter of Sidoti v New York State Div. of Human Rights, supra,* at 538; *Matter of Board of Educ. v New York State Div. of Human Rights,* 56 NY2d 257, 261; *State Off. of Drug Abuse Servs. v State Human Rights Appeal Bd., supra,* at 284).

The petitioner challenges the Division's finding that Pembrook and Corporate Property Investors were unaware of his

"personal religious beliefs and practices", noting that they must have been aware of his religion because he had erected a Nativity scene in the Nanuet Mall in prior years. However, this only underscores that the basis for the denial of a renewed lease was the nature of the petitioner's display, not his personal religious beliefs or practices. If Pembrook and Corporate Property Investors were aware of the petitioner's religion, his religion was irrelevant to their determination.

The petitioner contends that the Human Rights Law prohibits discrimination against him based upon the religious content of his display. However, this contention is contrary to the plain meaning of the statute, and its legislative purpose.

The petitioner's argument, taken to its logical conclusion, would equate the Human Rights Law with a "Bill of Rights" for the private sector. The Court of Appeals held in *SHAD Alliance v Smith Haven Mall* (66 NY2d 496, 503) that such constitutional protections apply only where there is "State action". The actions of the private owner of a shopping mall are not the equivalent of State action *(see, SHAD Alliance v Smith Haven Mall, supra,* at 505). The Human Rights Law is not a statutory basis for extending constitutional proscriptions against the infringement of free speech* and the free exercise of religion to the private sector. Rather, the purpose of the Human Rights Law is to promote individual opportunity by barring discrimination against persons based upon such personal attributes as religion.

### CONCLUSION

The denial of a lease to the petitioner was not based upon his religion, and, accordingly, did not violate the Human Rights Law. Accordingly, the judgment appealed from is affirmed.

MILLER, J. P., ALTMAN and FLORIO, JJ., concur.

Ordered that the judgment is affirmed, with costs to the respondents Pembrook Management, Inc. and Corporate Property Investors.

* Since the petitioner's religious display was to be presented in conjunction with a fireplace promotion, it constituted commercial speech *(see, Board of Trustees of State Univ. of N. Y. v Fox,* 492 US 469), which may be regulated by the Government, as long as the regulation does not "burden substantially more speech than is necessary to further the government's legitimate interests" *(Ward v Rock Against Racism,* 491 US 781, 799).