Bradley **DEBRASKA, et al.,**
**Plaintiffs–Appellants,**

v.

**CITY OF MILWAUKEE,**
**Defendant–Appellee.**

No. 98–4022.

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1999.

Decided Sept. 2, 1999.

Laurie A. Eggert, Milwaukee, WI, Michael T. Leibig (argued), Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, Fairfax, VA, for Plaintiffs–Appellants.

Grant F. Langley, Stuart S. Mukamal (argued), Office of the City Attorney, Milwaukee, WI, for Defendant–Appellee.

Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Almost 1900 current and former Milwaukee police officers, led by their union the Milwaukee Police Association, brought this suit against the City of Milwaukee under the Fair Labor Standards Act, 29 U.S.C. §§ 201–19. Sixty percent of these plaintiffs, including the Union, also participated in a FLSA suit against the City that began in 1988 and was settled in 1990. Part of the settlement was a "Plaintiffs' Covenant as to Future Actions" promising not to relitigate the issues raised in the 1988 complaint or urge any other officer to do so. The primary contention in this case— that the City's rules for using compensato-ry time off must be modified—was raised and dropped without resolution in the first. Two secondary issues—whether sick leave time devoted to attending "predisciplinary" hearings counts as work for FLSA purposes—are new. The district court held that claim preclusion (res judicata) prevents any police officer from litigating the compensatory-time question that was dropped in the first case, and that hours on sick leave or in "predisciplinary" hearings are not compensable. 11 F.Supp.2d 1020 (E.D.Wis.1998). We tackle the new contentions before taking up the question whether the compensatory-time issue remains open to litigation.

Milwaukee requires officers on sick or injury leave to remain at home unless they obtain permission, which is readily granted for purposes such as attending a doctor's appointment, purchasing food, attending religious services, and exercising under medical direction. According to the plaintiffs, time at home is like "on call" time, for which employees must be compensated if personal activities are severely restricted. See *Dinges v. Sacred Heart St. Mary's Hospitals, Inc.,* 164 F.3d 1056 (7th Cir.1999); 29 C.F.R. § 785.16. On plaintiffs' view, sickness produces not simply a day's pay, but four days' pay—regular pay for eight hours (the current situation), plus overtime pay for the other sixteen $(8 + (16 \times 1.5) =$ 32 hours' pay per day sick or injured, which goes up at double-time rates for weekends). The district court rejected this contention because plaintiffs failed to prove that their activities were severely restricted by the limitation; they respond that house arrest is restriction enough (and that, in any event, the district court improperly discounted two affidavits). Milwaukee asks us to affirm on a different ground: that the Act and its regulations do not mention sick leave, so an employer can attach any conditions it wants. That can't be so. Employers could not, for example, insist that as a condition of sick

leave employees abandon their entitlement to overtime pay for the rest of the year.

Nonetheless, we think that the district judge is right, for a simple reason: sick and injured officers are not fit to work, are not "engaged to wait" at home for work, and therefore are not working. Compare *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), with *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). A police department may define compensable sickness or injury as a condition sufficiently severe that it requires a person to stay at home. An officer who claims to be sick or injured to that extent, and therefore unable to work, may be required to behave in accord with the representation that led the City to grant the leave. It is the physical limitations that confine the officer to home; all the Police Department does is demand that officers end their leave, and come back to work, when they are at last able and eager to roam about like healthy people.

■ Pay for disciplinary hearings is our next subject. Milwaukee holds two before disciplining an officer. The first or preliminary hearing is a simple affair, of the kind contemplated by *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The second is formal. Time spent "adjusting grievances" at work is compensable. 29 C.F.R. § 785.42. The City concedes that under this regulation the formal disciplinary hearing counts as work. Its approach to the preliminary hearing, by contrast, has fluctuated. If an oral preliminary hearing was held during an officer's duty shift, then the City treated hearing time as work time. If an oral preliminary hearing was held at another time, however, the City did not treat it as work; in Milwaukee's view an officer's attendance was voluntary (the City did not require the officer to attend and was delighted if he did not) and therefore on his own time. In December 1996, after the officers filed this suit demanding compensation, the City ended all oral preliminary hearings. Today officers are allowed to submit written explanations, an option contemplated by *Loudermill*, 470 U.S. at 546, 105 S.Ct. 1487, and the City does not compensate officers for time spent drafting. The district court held that none of the time devoted to the preliminary hearing is compensable, whether the officer participates orally or in writing, because Milwaukee does not require the officer to participate or control the officer's use of time for his own purposes while the hearing is ongoing.

Plaintiffs respond that on the district court's (and Milwaukee's) approach even the formal, dispositive hearing would not be compensable, a conclusion that would contradict 29 C.F.R. § 785.42. If, as some of its language suggests, § 785.42 is limited to grievances adjusted during an employee's regular shift, there is no contradiction, for Milwaukee always has compensated officers for time devoted to hearings during their scheduled work time. An employee who voluntarily invests additional time can't demand that the employer pay him for self-appointed (and wholly self-interested) efforts. That this is the right way to understand § 785.42 is implied by another regulation, which defines "voluntary." Attendance at meetings "is not voluntary in fact if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance." 29 C.F.R. § 785.28. Because the outcome of a preliminary inquiry does not adversely affect either working conditions or the continuation of employment—and because Milwaukee does not draw an adverse inference from the submission of a written statement instead of an oral one—the officer's physical presence at the preliminary hearing was "voluntary" under this definition (though appearance at the formal, final hearing would not be "voluntary" by this standard). By failing to attend a predisciplinary hearing, an officer does not forfeit anything: the hearing still takes

place, the commanding officer must attend, and the charged officer does not lose any right to present his case in writing or to avail himself of any later procedures. Although the officer has forgone an opportunity to better his situation, the law does not require the added inducement of pay. What would be the point in proposing to dock an officer five or ten hours' pay as a disciplinary measure if the Police Department had to pay the same officer a similar number of hours (perhaps at overtime rates) in order to accomplish the discipline?

■ Only our most complex issue remains. Milwaukee takes advantage of its option to give officers compensatory time off in lieu of overtime. 29 U.S.C. § 207(o). It does not permit officers to use this time on demand, however; officers must apply in advance, and the City will deny the application if staffing levels would fall too far below the norm. According to the FLSA, employees must be allowed to use compensatory leave "within a reasonable period after making the request if the use ... does not unduly disrupt the operations" of the employer. 29 U.S.C. § 207(o)(5). See also 29 C.F.R. § 553.25(c), (d). Plaintiffs say that Milwaukee is too stingy about granting leave, and that it would not "unduly disrupt" the Police Department's operations to pay other officers (at overtime rates) to make up the shortfall in personnel that otherwise would occur when many officers want to take compensatory leave at the same time. Milwaukee responds that this understanding of "unduly disrupt" would make the compensatory-leave system pointless. If the only way to give one officer compensatory leave (in lieu of overtime pay) is to hire another at an overtime rate, the City might as well pay the officers in cash rather than leave to begin with.

The district court did not tackle this dispute substantively. Instead it held the plaintiffs precluded by the disposition of the 1988 suit. This is not because the 1990 settlement and consent decree resolved the dispute by contract (or judicial decision); the parties let the issue drop without resolution, and we therefore need not decide what effect the contractual resolution of a tough FLSA issue might have. The Supreme Court has held that "FLSA rights cannot be abridged by contract or otherwise waived", *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), but has not decided "what limitation, if any, § [2]16(b) of the Act places on the validity of agreements between an employer and employee to settle claims arising under the Act if the settlement is made as the result of a bona fide dispute between the two parties". *Brooklyn Bank v. O'Neil,* 324 U.S. 697, 714, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). See also *Jewell Ridge Coal Corp. v. United Mine Workers,* 325 U.S. 161, 169–70, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945); *Dinges,* 164 F.3d at 1059. All we have here, however, is a decision in 1990 to take a particular dispute off the bargaining table. Perhaps Milwaukee compensated the officers for this concession, but what it got in return was not a resolution but only a promise by the Union and the plaintiffs not to sue again. That promise cannot affect the 773 plaintiffs in this case who were not parties to the 1988 suit, and a claim that they are bound by the Union's handling of the issue would face substantial obstacles, given this circuit's dim view of preclusion by virtual representation in suits other than class actions (and FLSA suits are opt-in, rather than representative, actions). See *Tice v. American Airlines, Inc.,* 162 F.3d 966 (7th Cir.1998). So preclusion could apply only to those plaintiffs who were also parties to the 1988 case—and we think that even those officers are not precluded.

What the district court relied on is the branch of preclusion known as merger and bar: a plaintiff must present in a single case all legal claims arising out of the same transaction. Parties to the 1988 case could not have turned around the week after the settlement and sought additional recovery

under the FLSA for work done to date. But they have not tried to do so. This suit, filed in 1996, seeks compensation for labor that post-dated the settlement by three or more years. Plaintiffs charge the City with the same *type* of activity that they raised (and then dropped) in the 1988 case—stinginess in granting requests for compensatory leave—but the 1996 suit refers to subsequent *instances* of that behavior, which could not have been raised in the 1988 suit or resolved by the 1990 settlement. Allowing the consent decree to bar these claims would be akin to barring suit by a man who has been punched for the second Tuesday in a row by the same ruffian because the suit for the first blow has been abandoned—and this would be so even if the ruffian were acting in a predictable way, say in collecting a juice loan. The Supreme Court's decision in *CIR v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), is incompatible with the district court's approach. Dealing with tax years instead of work weeks, the Court wrote that "if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the *same tax year*. But if the later proceeding is concerned with a similar ... claim relating to a *different* tax year," it is open to adjudication without regard to the doctrine of merger and bar. *Id.* at 598, 68 S.Ct. 715 (emphasis added). A new pay period is to a wage earner what a new year is to a taxpayer. 29 C.F.R. § 790.21(b). Disputes about compensation for pay periods after the settlement must be resolved on the merits, even though disputes about earlier claims are closed.

Our conclusion that the employees are free to litigate their comp-time claim may have additional consequences. Milwaukee may have compensated the officers in 1990 by giving in on other debatable issues. If the prospective portion of the employees' bargain lasts only one pay period, then so too does the City's. Moreover, benefits the City has provided to the officers under the settlement for pay periods after 1990 may be offset against any recoveries that the plaintiffs receive on their comp-time claims—if, indeed, they ultimately prevail on those claims. Because the district judge did not reach the merits, and because factual disputes may be important, we do not do so either. (Both sides assert that there are no disputed issues of material fact, but the parties' versions of what the "undisputed" facts are differ markedly.)

■ Finally, there is the matter of the Union's covenant not to sue or to foment litigation about the matters covered by the 1988 complaint. The district judge dismissed the Union as a party after concluding that it could not represent its members in court, but it is possible that the City may be entitled to relief against the Union—for example, in the amount of the attorneys' fees spent to defend this case—if the current suit was sponsored by the Union and the covenant has been violated. The officers are represented by the same lawyers who filed the 1988 case, and the Union has underwritten this suit. Plaintiffs tell us that the 1990 covenant promised only to refrain from litigation about pre–1991 pay periods. Maybe so, and in that event the Union has kept its bargain. But the district court evidently read the promise more broadly, and on remand it should inquire whether the Union broke its promise—and, if so, what remedy is appropriate.

AFFIRMED IN PART AND REMANDED IN PART.