**Karen CAPASSO, Plaintiff,**

**v.**

**METROPOLITAN TRANSPORTATION AUTHORITY OF THE STATE OF NEW YORK, Metro–North Commuter Railroad, James O'Donnell, in his capacity as Chief of Police of the MTA, and Individually, Defendants.**

**No. 00 CIV. 5133(WCC).**

United States District Court,
S.D. New York.

April 12, 2002.

Bunyan & Baumgartner LLP, Blauvelt, NY (Joseph P. Baumgartner, of Counsel), for Plaintiff.

Hoguet Newman & Regal LLP, New York, NY (Brian C. Dunning, Sheryl B. Galler, of Counsel), for Defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Karen Capasso brings the instant action against defendants Metropolitan Transportation Authority of the State of New York ("MTA"), Metro North Commuter Railroad ("Metro North") and James O'Donnell, individually and as Chief of Police of the MTA, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, 42 U.S.C. § 1983, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, and the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* Plaintiff alleges that she was improperly denied overtime pay and "no-work" status for time spent confined to her home after she suffered a work-related injury. Defendants now move for summary judgment

pursuant to FED. R. CIV. P. 56(b). For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are undisputed unless otherwise indicated.[1] Plaintiff was employed by Metro North as a member of the Metro North Police Department from July 1, 1992 until December 31, 1997, and has been employed as a member of the MTA Police Department ("MTAPD") since January 1, 1998. (Defs. Rule 56.1 Stmt. ¶ 5.) On December 13, 1998, plaintiff suffered a work-related injury. She has been on sick leave and has not performed her regular duties since that date. (*Id.* ¶ 6.) Pursuant to the MTA's generous sick leave policy, plaintiff has continued to receive her full salary, including pay raises, from the date of her injury. (*Id.* ¶ 7.)

In order to prevent malingering and to curb abuse of the sick leave policy, the MTA places restrictions on police officers out on sick leave. (Corcoran Dep. at 33.) On March 31, 1999, the MTAPD issued Interim Order # 99–02 ("Order 99–02"). Order 99–02 provided, in relevant part, that:

> All members of the Department shall report sick when suffering from illness

or injury which would prevent the proper performance of duty. He/She shall telephone their respective Communications Desk Supervisor at least one (1) hour before the start of his/her scheduled tour....

> \* \* \* \* \* \*

> A member of the Department on the sick list shall be available daily ... for sick investigation between the hours of 9:00 AM to 8:00 PM....

> \* \* \* \* \* \*

> Permission to temporarily leave his/her sick location for non-emergency medical attention or other necessities must be obtained in advance from the respective Region's Communication Desk Supervisor prior to departure....

> \* \* \* \* \* \*

> If a member is out of his/her sick location for more than three (3) hours, that member will again call the Desk Supervisor and make notification as to his/her present location and how much longer he/she will be out....

(Galler Decl., Ex. F.) On October 21, 1999, the MTAPD issued Interim Order # 99–06 ("Order 99–06"), a much more detailed regulation governing sick and injured leave, to replace Order 99–02. Order 99–06 provides, in relevant part:

---

1. Plaintiff and defendants submitted statements of material facts pursuant to Local Civil Rule 56.1, which provides:
 (a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.... (b) The papers opposing a motion for summary judgment shall include a separate, *short and concise* statement of the material facts as to which it is contended that there exists a genuine issue to be tried. (Emphasis added.)

Plaintiff has submitted three Rule 56.1 statements. The first three-page statement is in response to defendants' statement of approximately the same length. The second and third statements, however, contain 161 factual allegations and continue for thirty-five pages. While we will of course consider all of plaintiff's alleged disputed issues of fact in deciding the instant motion, we caution future litigants that Rule 56.1 is intended to aid the Court in identifying material issues of fact and not to provide a vehicle for attorneys to submit prolix arguments in opposition or in support of a motion.

### 1. Reporting Sick

a. A member of the Department shall report sick only when suffering from an illness or injury, which would prevent the proper performance of duty....

### 2. Reporting Sick While Off Duty

When it is necessary for a member of the Department to report sick while off duty, the member shall:

a. Telephone the Communications Desk Supervisor at least one (1) hour before the start of his/her scheduled tour....

b. Remain at reported sick location, except in extreme medical emergency, or when permission to leave has been granted by competent authority.

c. Provide Desk supervisor with the following information:

\* \* \* \* \* \*

3. Present sick location, house number.... If other than his/her residence, member will supply the identity of the person/part(sic) he or she will be staying with.

\* \* \* \* \* \*

### 5. Leaving Sick Location—Sick Investigation

a. A member of the Department on the Department sick list, shall be available for sick investigation between the hours of 9:00 AM and 8:00 PM to a Department supervisor, a Department physician, the MTA Medical Department, in person, or via phone at his/her reported location, unless otherwise directed.

\* \* \* \* \* \*

c. Permission to temporarily leave his/her sick location for non-emergency medical attention or other necessities must be obtained in advance from the Communications Desk Supervisor pri-or to such departure. The member will state the reason for leaving, name of destination, the address, telephone number, and how long he/she will be out.

d. If a member is out of his/her sick location for more than three (3) hours, member will again call the Communications Desk Supervisor and make notification as to his/her present location and how much longer he/she will be out....

\* \* \* \* \* \*

g. A member appearing at the MTA Medical Department for an examination in connection with a heart condition, broken limb, post surgical convalescence or similar prolonged illness and is placed on "No Work" status, shall not be the subject of telephone calls or investigation by the department, for the period of convalescence determined by the MTA Medical Department.

***Permission to be placed on "No Work" status will be granted by the Chief of Police or his designee and will be decided on a case by case basis.***

(Galler Decl., Ex. G. (emphasis in original).)

Plaintiff is, and has always been, subject to the aforementioned sick leave policies. (Defs. Rule 56.1 Stmt. ¶ 9.) She has never been denied permission to leave her home and has never been disciplined for any infraction of the sick leave policies. (*Id.* ¶ 8.) In fact, plaintiff leaves her home daily, often without prior permission, to run errands such as grocery shopping and banking, to obtain medical treatment and to visit with friends and relatives. (*Id.* ¶ 10.)

In December 2001 plaintiff was granted no-work status in connection with a surgical procedure. (Galler Supp. Decl., Ex. A.)

Prior to that date, plaintiff never requested that she be placed on no-work status, allegedly because she was not aware of how such a request was made. (Defs. Rule 56.1 Stmt. ¶ 11.) Plaintiff contends that when she inquired about no-work status, she was informed by her union representative that no policy existed. (Capasso Dep. at 42–43.)

In early 1999, pursuant to Order 99–06, O'Donnell designated the authority to Deputy Chief Corcoran and Assistant Chief Coppola to determine whether to grant no-work status to individual police officers. (Defs. Rule 56.1 Stmt. ¶ 11.) Corcoran testified that the only guidelines used to make such a determination are contained in Order 99–06(5)(g). Upon receiving a request for no-work status from an officer or the Police Benevolence Association, Coppola would review the Daily Absentee Report and, together with Corcoran, make a determination with respect to the request. (Corcoran Dep. at 29; Coppola Dep. at 25–26, 29.) The Daily Absentee Report contains, *inter alia*, the name of the employee, the sick reporting location, an indication as to whether the employee received an investigatory phone call and the nature of the injury or illness.

Plaintiff filed the instant action on July 12, 2000. Plaintiff argues that Order 99–06 requires plaintiff to remain at her residence twenty-four hours a day, seven days a week unless permission to leave is granted by the Communications Desk Supervisor. To the extent that plaintiff is confined to her home in excess of her normal tour of duty, plaintiff alleges that she is entitled to overtime pay under the FLSA. (Am. Complt.¶¶ 18–25.) Plaintiff further alleges that Order 99–06 is facially unconstitutional and that, with respect to no-work status, defendants treated plaintiff differently from similarly situated MTA police officers in violation of the Fourteenth Amendment

and the NYSHRL. (*Id.* ¶¶ 26–47.) Finally, plaintiff contends that defendants' confinement policy caused her severe mental, emotional and physical distress, in violation of FELA. (Am.Complt.¶¶ 48–61.)

## DISCUSSION

### I. *Summary Judgment Standard*

Defendants move for summary judgment pursuant to FED. R. CIV. P. 56. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 254 (E.D.N.Y.1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali,* 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Silver v. City Univ. of N.Y.,* 947 F.2d 1021, 1022 (2d Cir.1991).

### II. *FLSA Overtime Claim*

■ The FLSA was enacted to ensure that employees are fairly compensated. *See Reich v. New York City Transit Auth.,*

45 F.3d 646 (2d Cir.1995). The statute requires that employers pay overtime at a rate of not less than one and one-half times the employee's regular rate for hours worked in excess of forty per week. *See* 29 U.S.C. § 207(a). Compensable "work" under the FLSA is defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Holzapfel v. Town of Newburgh,* 145 F.3d 516, 522 (2d Cir.1998) (quoting *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944)).

■ As an initial matter, plaintiff argues that the determination of what constitutes "work" is an issue of fact to be resolved by the factfinder. However, the Second Circuit has stated that "whether plaintiff is entitled to overtime pay is a mixed question of law and fact." *Id.* at 521. The first issue to address is whether the alleged activity could potentially constitute "work" under the FLSA. This is an issue of law to be determined by the trial judge. *See id.* ("the trial judge [is] responsible for determining as a matter of law whether plaintiff's activities could potentially constitute 'work.' "); *see also Monserrate v. City of New York,* No. 99 Civ. 12173, 2000 WL 1741673, at *1 (S.D.N.Y. Nov.27, 2000). Once decided, the factfinder must "decide as a question of fact, not only how much of plaintiff's time . . . [falls] within the court's definition of 'work' and would be compensable, but also how much of that time was spent with the employer's actual or constructive knowledge." *Holzapfel,* 145 F.3d at 521. Accordingly, this Court is required to determine, as a matter of law, whether plaintiff's alleged time at her sick location constitutes compensable "work" under the FLSA.

■ Plaintiff alleges that she was required by Order 99–06 to remain in her home at all times. Plaintiff argues that the time confined to her home constitutes compensable "work" under the FLSA because it was required by the MTA and because it primarily served defendant's interests in managing their sick leave policy. In *Monserrate,* the court confronted a nearly identical situation. There, police officers employed by the City of New York were afforded unlimited paid sick leave provided that they remained in their homes for the entire twenty-four hour work day associated with their shifts. *See Monserrate,* 2000 WL 1741673, at *1. The court adopted the reasoning advanced by the Sixth and Seventh Circuits in concluding that the time expended at home pursuant to the sick leave policy was not compensable "work." *See id.; Aiken v. City of Memphis,* 190 F.3d 753 (6th Cir.1999); *DeBraska v. City of Milwaukee,* 189 F.3d 650 (7th Cir.1999). In *DeBraska,* the court held that "sick and injured officers are not fit to work, are not 'engaged to wait' at home for work, and therefore are not working." 189 F.3d at 651. The court in *Aiken* went one step further and considered if the definition of "work" in 29 C.F.R. §§ 553.221(c)-(d) supported the plaintiffs' claims:

> 29 C.F.R. § 553.221(c) provides that "[t]ime spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work." . . . The court held that requiring the plaintiffs to remain at home on sick days was not "so onerous as to prevent employees from effectively using the time for personal pursuits." *Aiken,* 190 F.3d at 761.

*Monserrate,* 2000 WL 1741673, at *2.

We similarly adopt the reasoning of the Sixth and Seventh Circuits. Order 99–06

applies only to those police officers who are "suffering from an illness or injury, which would prevent the proper performance of duty." (Galler Decl., Ex. G.) Order 99–06 does not contemplate that plaintiff be available to work on an "on-call" basis. Here, there is no genuine dispute that plaintiff is not, under any reasonable interpretation of the word, working. *See Monserrate,* 2000 WL 1741673, at \*2 (stating that to argue plaintiff was working "overlooks obvious facts, similarly pointed out by Judge Easterbrook ... that the officers are 'sick and injured ... are not fit to work ... and therefore are not working' ") (quoting *DeBraska,* 189 F.3d at 651). Plaintiff nonetheless argues that the requirement that she remain at home is required by and primarily benefits defendants and therefore constitutes "work." This contention is both inaccurate and unpersuasive.[2] While requiring sick employees to report their location may assist defendant MTA in its laudable efforts to curb sick leave abuse, this does not alter the obvious fact that the sick leave policy primarily benefits plaintiff. To suggest otherwise borders on the frivolous, for plaintiff is the beneficiary on an unusually generous sick leave policy that undoubtedly imposes a substantial financial burden on defendant MTA. Furthermore, there is no indication that defendants prevented plaintiff from using the sick time for personal pursuits. Plaintiff is not required to perform any professional duties, has never been denied permission to leave her reported sick location and has left on numerous occasions for purely personal reasons. Accordingly, we conclude that plaintiff's alleged sick time is not compensable "work" under the FLSA and

grant summary judgment in favor of defendants.

### III. *Constitutional and Section 1983 Claims*

#### A. *Facial Challenge*

 Plaintiff alleges that Order 99–06 is facially unconstitutional. Courts generally evaluate the constitutionality of a rule or regulation governing the conduct of governmental employees under the "rational relationship" test. *See Monahan v. City of New York Dep't of Corr.,* 10 F.Supp.2d 420, 424 (S.D.N.Y.1998); *Voorhees v. Shull,* 686 F.Supp. 389, 393–94 (E.D.N.Y.1987); *Uryevick v. Rozzi,* 751 F.Supp. 1064, 1068 (E.D.N.Y.1990). In particular, because of the "legitimate interests that a government has in regulating the conduct of its own agents and employees, the facial constitutionality of municipal regulations relating to municipal employees is usually satisfied if the ... government can show a rational relationship between the challenged regulation and the state interest it is claimed to foster." *Monahan,* 10 F.Supp.2d at 424. Additionally, the regulation must be connected in a non-arbitrary fashion to the state interest. *See Uryevick,* 751 F.Supp. at 1068.

There is no genuine dispute that Order 99–06 is rationally related to defendants legitimate interests in minimizing malingering and preventing sick leave abuse. *See Monahan,* 10 F.Supp.2d at 424 (holding that the challenged regulation "rationally serve[d] the legitimate state interests of verifying officers' illnesses and preventing malingering"); *Loughran v. Codd,* 432 F.Supp. 259, 263 (E.D.N.Y.1976) (not-

---

**2.** Although irrelevant to our conclusion, we note that plaintiff is not required to stay at home, but only to remain at a "reported sick location." Furthermore, it is not clear whether plaintiff was required to remain at her designated sick location at all times or just during those hours that she had to be available for sick investigation. (Galler Decl., Ex. G.)

ing that the government employer "should rightly have available an effective means by which to verify the legitimacy of an officer's disability claim and the necessity for his absence from duty"). Plaintiff argues, however, that Order 99–06 is unconstitutional because the absence of guidelines for implementation renders it arbitrary. Specifically, plaintiff contends that there is no method to guide how the Communications Desk Supervisor decides whether or not to grant permission to leave the sick location. (Pl. Mem. Opp. Summ. J. at 12.)

■ "A regulation is not rendered unconstitutional simply because its implementation requires the exercise of substantial discretion, unless such exercise presents an unreasonable potential for arbitrary denial of a constitutional right." *Monahan*, 10 F.Supp.2d at 425. In *Voorhees*, the court held that a sick leave regulation issued by the Police Department of Rockville Centre was facially unconstitutional. 686 F.Supp. at 393–95. The regulation required a sick officer to remain in their sick location unless otherwise authorized by the Police Surgeon or the Police Commissioner. *Id.* at 391. The court reasoned that because there were no guidelines governing the application of the memorandum, "the potential for wholly arbitrary denial of an officer's constitutionally protected rights to vote, go to church [and to] freely associate ... exists." *Id.* at 395. Similarly, in *Uryevick*, the court held unconstitutional a Nassau County regulation requiring police officers on sick leave to remain in their place of residence "except when permission is granted [when the Desk Officer] determine[s] whether the request is for a reasonable purpose and time." 751 F.Supp. at 1066.

In the instant action, Order 99–06 requires that an officer on sick leave remain in his or her reported sick location unless "[p]ermission to temporarily leave ... for non-emergency medical attention or other necessities ... [is] obtained in advance form the Communications Desk Supervisor." The regulation does not indicate how the supervisor makes such a determination, nor do defendants proffer any explanation. Accordingly, defendants' motion for summary judgment must be denied with respect to this issue. We note that our decision is not inconsistent with *Monahan*, where the court held that City of New York's sick leave policy was constitutional despite that fact that sick officers were required to remain at home for certain periods of time. The *Monahan* court noted that "the extent and duration of the home confinement is much less restrictive, and the permitted exceptions more readily available and better defined, then in either *Voorhees* or *Uryevick*." 10 F.Supp.2d at 425. Unlike *Monahan*, where the regulation did not require officers to remain in their residences for the first eight sick days of a given year and permitted officers to leave for up to four hours each day, the regulation here more closely resembles those found unconstitutional in *Voorhees* and *Uryevick*.[3]

### B. *Equal Protection Claim*

■ Plaintiff also claims that in failing to place her on no-work status, defendants deprived her of the equal protection of the laws in violation of the Fourteenth Amendment and § 1983. The Equal Protection Clause of the Fourteenth Amendment "is essentially a directive that all persons similarly situated should be treat-

---

3. Having denied defendants' motion for summary judgment there is no need to address plaintiff's additional arguments that Order 99–06 is facially unconstitutional with respect to the method by which a police officer is granted no-work status.

ed alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Plaintiff's equal protection challenge "is not a challenge to the [regulation]—it is a claim of 'selective enforcement' of the [regulation]." *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995). In order to establish a claim of selective enforcement, a plaintiff must demonstrate that: "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights or by maliciousness or bad faith to injure the person." *Id.* (citing *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992)).

■ Defendants move for summary judgment as to this claim, arguing that plaintiff failed to raise an issue of fact that she was treated differently from other similarly situated police officers. Plaintiff, however, has identified numerous police officers, some suffering from injuries that are apparently comparable in severity to plaintiff's, who are on no-work status. (Pl. Confidential Rule 56.1 Stmt. ¶¶ 1–26.) Defendants argue that it is inappropriate to compare plaintiff to those on no-work status because she did not qualify to be placed on no-work status. Nonetheless, although plaintiff was not bedridden and was obviously able to call the Communications Desk Supervisor when required, the same is likely true for many of those officers granted no-work status. Furthermore, there is a genuine unresolved issue of fact as to how an officer is placed on no-work status. Corcoran and Coppola both testified that a request must first be made either by the sick or injured officer or by their union. (Corcoran Dep. at 29; Coppola Dep at 25–26, 29.) No such require-

ment is contained in Order 99–06. Although plaintiff admits that neither she nor anyone on her behalf made a request to be placed on no-work status, there remains an issue of fact as to whether the other officers placed on no-work status were required to make such a request. We note, however, that plaintiff bears the ultimate burden to demonstrate that other injured officers did not first request to be placed on no-work status. In the absence of such proof, plaintiff will be unable to demonstrate that she was treated differently than others similarly situated, namely, those officers who did not request to be placed on no-work status.

Defendants additionally contend that summary judgment is appropriate because plaintiff fails to satisfy the second prong of the selective enforcement inquiry enumerated in *Zahra.* Plaintiff argues for the first time in her response papers that defendants' failure to place her on no-work status was in retaliation for an unrelated sexual harassment lawsuit brought against Coppola. Defendants and this Court share similar doubts about plaintiff's claim:

> Plaintiff's belated attempt to infer a "motive" for her alleged treatment is a sham. Chiefs Corcoran and Coppola each testified that the only reason Plaintiff was not on no-work status was because she did not meet the required criteria.... Moreover, Plaintiff filed her first lawsuit against the MTA in or about February 2000—fourteen months after she was assigned sick leave status in connection with her alleged injury of December 1998. Finally, when Plaintiff requested no-work status in December 2001 in connection with a surgical procedure, her request was granted.

(Defs. Reply Mem. Supp. Summ. J. at 6.) Nevertheless, plaintiff has raised an issue of fact that, if proven, would be sufficient to sustain her claim. Therefore, defen-

dants' motion for summary judgment as to this issue must be denied. However, as the prior lawsuit is the only asserted basis for the alleged impermissible motive, plaintiff's surviving claim must be restricted accordingly. As a result, in order to prevail on her selective enforcement claim, plaintiff must demonstrate that she was treated differently from others similarly situated *after* the filing of the prior sexual harassment action. Obviously, should plaintiff prevail, her claim for damages must similarly be limited to the period subsequent to the filing of the prior action.

### C. *Municipal Liability*

 Defendants argue that plaintiff's § 1983 selective enforcement claim must be dismissed because plaintiff cannot establish municipal liability. "A municipality may not be held liable in an action under § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior.*" *Zahra,* 48 F.3d at 685 (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Nonetheless, a § 1983 claim may be brought against a municipality where a "policy or custom" of the municipality deprived the plaintiff of his constitutional rights. *See id.* at 690–91. To establish municipal liability, a plaintiff must show that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." *Id.* at 694. Furthermore, where, as here, there is a claim against an individual municipal employee in his official capacity, "there must be proof of such a custom or policy in order to permit recovery ... [because] such claims are tantamount to claims against the municipality itself." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) (citing *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)).

 Where no municipal policy exists, "liability may nonetheless arise from 'a course of action tailored to a particular situation' by a municipal decision maker, provided that 'the decision maker possesses final authority to establish municipal policy with respect to the action ordered.'" *Legal Aid Soc'y v. City of New York,* 114 F.Supp.2d 204, 231 (S.D.N.Y.2000) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). As the Second Circuit recently explained:

Where the contention is not that the actions complained of were taken pursuant to a local policy that was formally adopted or ratified but rather ... were taken or caused by an official whose actions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved. It does not suffice for these purposes that the official has been granted discretion in the performance of his duties. Only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability.

Whether the official in question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law. The relevant legal materials[ ] include state and local positive law, as well as custom or usage having the force of law. The matter of whether the official is a final policymaker under state law is to be resolved by the trial judge before the case is submitted to the jury.

[Moreover], the official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be responsible under state law for making policy in that area of the municipality's busi-

ness. Thus, the court must ask whether the governmental official is a final policymaker for the local government in a particular area, or on the particular issue involved in the action.

*Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.) (internal citations, alterations and quotation marks omitted), *cert. denied,* 531 U.S. 813, 121 S.Ct. 47, 148 L.Ed.2d 16 (2000).

■ In support of her argument for municipal liability, plaintiff summarily states that "[a]s there were no written guidelines for the implementation of ... Order 99–06, Chief Coppola and Chief Corcoran were the final policy makers." (Pl. Mem. Opp. Summ. J. at 18.) Defendants counter that Coppola and Corcoran did not have policymaking authority. However, defendants also state that O'Donnell delegated authority to determine whether to grant no-work status to Corcoran and Coppola. (Defs. Rule 56.1 Stmt. ¶ 11.) Neither party has submitted evidence as to whether O'Donnell had final policymaking authority and, if so, whether his delegation of authority was merely ministerial or included policymaking authority. More information is needed before a final determination can be made on this issue. Accordingly, defendants' motion for summary judgment on plaintiff's municipal liability claim must be denied. *See Cipolla v. County of Rensselaer,* 129 F.Supp.2d 436, 457 (N.D.N.Y. 2001) (denying summary judgment without prejudice where the court did "not now have sufficient evidence to determine, as a matter of law, whether Defendants had policy making authority in the pertinent areas"); *Legal Aid Soc'y,* 114 F.Supp.2d at 233 (denying summary judgment with leave to renew on the question of municipal liability where the "possibility that the Mayor possess[ed] final policymaking authority ... [was] less than fully clear"); *Rucci v. Thoubboron,* 68

F.Supp.2d 311, 326 (S.D.N.Y.1999) (Conner, J.) (denying summary judgment on the issue of whether the defendant was a final policymaker because "the County has offered no evidence on this issue, and since the ultimate burden of showing the absence of a genuine issue of material fact resides with the movant"). Of course, the burden of demonstrating that Corcoran and Coppola were final municipal policymakers will ultimately rest with plaintiff.

### D. *Qualified Immunity*

■ Defendants move to dismiss the individual liability claim against O'Donnell on the ground that he is entitled to qualified immunity under § 1983. For the following reasons, we agree.

■ As the Second Circuit has recently stated,

A government official sued in his individual capacity is entitled to qualified immunity in any of three circumstances: (1) if the conduct attributed to him is not prohibited by federal law; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct; or (3) if the defendant's action was objective[ly] legal[ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken. These three issues should be approached in sequence, for if the second is resolved, the third becomes moot; a favorable resolution of the first moots both the second and the third.

*X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999) (internal citations and quotations omitted). Here, there is no evidence that any of the alleged violations of plaintiff's equal protection rights are attributable to O'Donnell. During her deposition, plaintiff admitted that she never spoke with O'Donnell about her sick leave

status and that she was unaware of anyone having spoken to him on her behalf. (Capasso Dep. at 69.) Plaintiff testified that she had "no idea" whether O'Donnell had any knowledge of the allegations in her Complaint. (*Id.* at 78.) Furthermore, Corcoran and Coppola both testified that together they made decisions as to whether to grant or deny no-work status. Because plaintiff has failed to allege any conduct fairly attributable to O'Donnell that would be violative of federal law, there is no genuine issue for trial with respect to his conduct. See FED. R. CIV. P. 56(e). Therefore, summary judgment is granted in favor of defendant O'Donnell in his individual capacity as to plaintiff's § 1983 selective enforcement claim.

## IV. *State Discrimination Claim*

 N.Y. Exec. Law § 296 provides, in relevant part:

1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

"The purpose of the Human Rights Law is to ... bar[ ] discrimination against persons based upon ... personal attributes." *See Bruno v. Pembrook Mgmt., Inc.,* 212 A.D.2d 314, 628 N.Y.S.2d 971, 975 (2d Dep't 1995). Plaintiff summarily states in her opposition papers that she is being discriminated against because of her "disability." (Pl. Mem. Opp. Summ. J. at 24.) However, plaintiff does not specify, nor is there any evidence to indicate, what "disability" plaintiff suffers from. Furthermore, there is no evidence that plaintiff was discriminated against on the basis of the unspecified disability. Plaintiff argues that "[s]olely as a result of Plaintiff's disability she is required to remain in her residence twenty-four hours a day, seven days a week. This requirement is not placed on non-disabled police officers." (*Id.*) This argument is without merit. The fact that healthy police officers are properly not subjected to regulations governing sick or injured police officers is too obvious to warrant prolonged discussion. All sick or injured police officers are subject to the provisions contained in Order 99–06. Because plaintiff has utterly failed to demonstrate how she in particular was adversely treated on the basis of a disability or other personal attribute, summary judgment is granted in favor of defendants with respect to this claim.

## V. *FELA Claim*

Plaintiff asserts a claim under FELA, which provides that "every common carrier by railroad while engaging in [interstate] commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." 45 U.S.C. § 51. The statute defines the term "common carrier" as an entity "charged with the duty of the management and operation of a common carrier." 45 U.S.C. § 57. The issue of whether the MTA is subject to FELA is currently pending before the Second Circuit in *Greene v. Long Island Rail Road Co.,* 98 Civ. 4316.

Although defendants brought the instant motion for summary judgment, they request we not consider plaintiff's FELA claim because the impending decision in *Greene* may prove dispositive. As this both furthers the considerable public policy favoring judicial economy and does not prejudice plaintiff, we will abide by defen-

dants' request and decline to rule on plaintiff's FELA claim.

## CONCLUSION

For the reasons stated above, we grant defendants' motion for summary judgment as to plaintiff's FLSA and NYSHRL claims and as to defendant O'Donnell's motion for qualified immunity under § 1983. However, we deny defendants' motion for summary judgment with respect to plaintiff's claim that Order 99–06 is facially unconstitutional and with respect to plaintiff's § 1983 equal protection claim, as limited herein. Additionally, all claims against defendant Metro North are dismissed with prejudice.[4]

SO ORDERED.

---

4. Metro North merged into the MTA on January 1, 1998, eleven months prior to the date of plaintiff's injury. Plaintiff's attorney orally represented to this Court that plaintiff does not contest Metro North's dismissal from this action.