**Edward COX, Michael Hexel, Kenneth Kort, Robert Laibach, Michael O'Dell, Karl Osterman, Gerard Siegrist, Stephen Terstenyak, Robert Westfall, and others similarly situated, Plaintiffs,**

v.

**THE TOWN OF POUGHKEEPSIE, NEW YORK, Defendant.**

No. 01 Civ. 3794(CM).

United States District Court, S.D. New York.

July 12, 2002.

Ronald G. Dunn, Gleason, Dunn, Walsh & O'Shea, Albany, NY, for the Plaintiffs.

Thomas D. Maher, Jr., Town Attorney, Town of Poughkeepsie Legal Department, for the Defendant.

## MEMORANDUM DECISION AND OPINION GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR LEAVE TO AMEND ITS ANSWER

McMAHON, District Judge.

Certain Police Officers from the Town of Poughkeepsie, on behalf of themselves and others similarly situated (the "Officers"), bring suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, against the Town of Poughkeepsie, New York to recover overtime compensation allegedly due Police Officers who voluntarily provide court security in the Town of Poughkeepsie Town Court, in addition to performing their regular duties as Police Officers for the Town of Poughkeepsie Police Department.

The Officers move for partial summary judgment as to liability pursuant to Fed. R.Civ.P. 56. Defendant cross-moves for summary judgment. Defendant also moves for leave to amend its Answer pursuant to Fed.R.Civ.P. 15(a) by adding certain defenses and a claim for excess payment.

### FACTS PERTINENT TO THE MOTIONS

The following are the undisputed facts in this case: [1]

---

1. Defendant has failed to file a statement of facts pursuant to Local Civil Rule 56.1(b). This failure means that the material facts in the Officer's Local Civil Rule 56.1 statement are deemed admitted as a matter of law. *See* Local Rule 56.1(c); *see also Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998) (court "accept[ed] as true the material facts contained in defendants' Local Rule 3(g) state-

ment because plaintiff failed to file a response"); *Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984) (affirming district court's dismissal of action based on the uncontroverted facts adduced by defendants in its unopposed Rule 3(g) statement). I will, therefore, accept all of the Officers' proposed facts as true for purposes of this motion.

Plaintiffs are Police Officers, either currently or formerly employed by the Town of Poughkeepsie, New York. The Officers have consented to this lawsuit being brought on their behalf pursuant to 29 U.S.C. § 216(b).

Defendant Town of Poughkeepsie (the "Town") is a municipal corporation organized pursuant to the laws of the State of New York.

At all relevant times, the Officers were employed by the Town as Police Officers and were employees within the meaning of § 201 of the Fair Labor Standards Act, 29 U.S.C. § 203–e[2][c]. At all relevant times, the Town was and is an employer within the meaning of § 203 of the FLSA, and a public agency within the meaning of § 203(x) of the FLSA. The Town is an enterprise, as defined by section 3(r) of the FLSA, 29 U.S.C. § 203(r).

Persons who work in the Town of Poughkeepsie Town Court are all employees of the Town. All persons who work in the Town Court receive a paycheck issued by the Town of Poughkeepsie payroll as administered by the Town Comptroller. Persons who work as Police Officers in the Town of Poughkeepsie Police Department are also employees of the Town of Poughkeepsie.

*The Court Security Job*

Each day that Town Court is in session, a sworn Police Officer from the Town of Poughkeepsie Police Department is assigned the job of providing security for the Town Judge. The Police Officer stands next to the Judge at all times that Court is in session. Sworn Police Officers from the Town are the only persons who perform this job of providing security for the Judge. Police Officers who provide court security wear their regular police uniform, badge and Police Department-issued weapon when they serve in Town Court.

All work in Town Court performed by Police Officers is done at times that are in addition to each Officer's regular schedule as a Police Officer with the Town Police Department. The assignment is purely voluntary. On a monthly basis, the secretary for the Chief of Police prepares and posts a sign-up sheet with the schedule of Town Court in the Police Department Squad Room. Sworn Police Officers with the Town Police Department are then eligible to sign up for court duty. Officers who sign up for court duty report to court and complete a court security slip in forms prepared and maintained by the Police Department. The Police Officer signs his or her name, badge number, court date and time spent in court. The form is signed by the Town Judge. The Police Officer then submits the form to his or her Police Department "Squad Supervisor" for approval. The squad supervisor approves the submitted slip and forwards it to the Town Police Department "Patrol Captain." After approval by the Patrol Captain, the form is submitted to the Police Chief's secretary who adds the time to the payroll worksheet. That payroll worksheet is submitted to the Town Comptroller. Payment is then added to the Police Officer's next regular bi-weekly paycheck, issued by the Town.

*The Officers' Regular Rate of Pay*

Employees covered under the FLSA are entitled to overtime compensation at the rate of one and one-half times their regular rates of pay for all hours worked in excess of forty hours per week, except as otherwise provided in section 7 of the FLSA, 29 U.S.C. § 207[a][1]. The Officers' regular rate of pay is set by a collective bargaining agreement entered into between the Town and the Police Benevolent Association ("PBA") representing all Police Officer employees of the Town of Poughkeepsie Police Department. The Officers' regular rate of pay for work as a Police Officer with the Town varies based on years of service and rank. Every pay

period the Town comptroller prepares a payroll worksheet for each employee in the Town Police Department showing their rate of pay.

At all relevant times to this case and for a period of time of at least three years, the Town paid Police Officers a flat rate of $15.32 for all time spent in performing court security. An example of the overtime rate of pay paid to plaintiff Police Officer Edward Cox for overtime work unrelated to security at the Town Court is as follows for the following periods:

| Plaintiff's Name | Time Period | Overtime Rate of Pay |
|---|---|---|
| Edward Cox | 5/3/98—12/31/98 | $41.75 |
| | 1/1/99—12/31/99 | $43.02 |
| | 1/1/00—12/31/00 | $44.96 |
| | 1/1/01—12/31/01 | $46.27 |

The other named plaintiffs enjoy similar overtime rates for their overtime work performed for the Police Department unrelated to the Town Court work.

*Procedural History*

On July 12, 1999, attorneys for the Town of Poughkeepsie PBA wrote a letter to Frank E. Redl, Esq., the Town Attorney of the Town of Poughkeepsie. *See* Dunn Aff., Ex. R. This letter placed the Town on actual notice of a claim that its method for paying Police Officers for work in Town Court violated the FLSA. On January 27, 2000, the PBA's attorneys wrote another letter to the new Town Attorney, James Coombs, Esq., informing him of the ongoing dispute and their earlier letter.

On May 3, 2001, the Officers filed this lawsuit alleging violations of the FLSA, and seeking to recover unpaid overtime compensation owed to plaintiffs by their employer, the Town, as well as liquidated damages, injunctive and declaratory relief, reasonable attorneys' fees, costs and expenses.

On January 7, 2002, the Officers moved for partial summary judgment as to liability, and for a determination that they are entitled to liquidated damages and a three-year statute of limitations. On January 17, 2002, the Town moved for summary judgment, and also moved to amend its Answer.

For the reasons stated below, the Officers' motion for partial summary judgment is granted, the Town's cross-motion for summary judgment is denied, and the Town's motion for leave to amend its Answer is granted in part and denied in part.

### DISCUSSION

#### I. *Summary Judgment Standard*

Both Plaintiffs and Defendant move for summary judgment pursuant to Fed. R.Civ.P. 56. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F.Supp.2d 249, 254 (E.D.N.Y.1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali*, 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Silver v. City Univ. of N.Y.*, 947 F.2d 1021, 1022 (2d Cir.1991).

## II. *FLSA Overtime Claim*

Congress enacted the FLSA to ensure that employees are fairly compensated. *See Reich v. New York City Transit Authority,* 45 F.3d 646 (2d Cir.1995); *Capasso v. Metropolitan Transportation Authority of the State of New York,* 198 F.Supp.2d 452, 458 (S.D.N.Y.2002). The FLSA requires that employers pay overtime at a rate of not less than one and one-half times the employee's regular rate for hours worked in excess of forty per week. 29 U.S.C. § 207(a). Compensable "work" under the FLSA is defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily for the benefit of the employer and his business." *Holzapfel v. Town of Newburgh,* 145 F.3d 516, 522 (2d Cir.1998) (quoting *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944)); *Capasso,* 198 F.Supp.2d at 458.

### A. *The Town is the employer of both the Town Court employees and the Town Police employees, and controls the Officers' work as court security officers*

 Plaintiffs, in their motion for partial summary judgment, argue that since the Officers are paid from the same payroll on the same paycheck for both Police Department and Town Court work, their employment in court is associated from their employment in their other police duties, and they should be paid overtime for the Town Court work. I agree.

In their motion, the Officers contend that they should receive overtime compensation because, under the general language of 29 U.S.C. § 207(a)(1), the Town is their employer for both their work with the Police Department and the Town Court. Section 207(a)(1) provides:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

The Town all but concedes that all employees in Town Court and all employees in the Police Department are actually employees of the same employer—the Town. This is confirmed by the fact that the plaintiffs are paid for the security work they perform in court on the same paycheck that they are paid for work they perform on patrol or for their other police duties.

Even if the Town were to argue that it was somehow a different employer from the Town Court, the Town and the Town court are at least "joint employers." 29 CFR 791.2(a) provides as follows:

**Sec. 791.2 Joint employment.**

(a) A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer. A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the em-

ployment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act. On the other hand, if the facts establish that the employee is employed jointly by two or more employers, *i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.* In discharging the joint obligation each employer may, of course, take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers. *Id.* (emphasis added).

The Court finds that the Town is Plaintiffs' employer, or that the Town Police and the Town Court are joint employers of the Officers. While the Town does not require the Officers to work as court security officers, it does exercise administrative control over their performance of this voluntary duty by allowing the officers to wear their police uniforms, carry their firearms and by issuing their paychecks. Therefore, the Town must compensate the Officers for their work as court security officers with the appropriate overtime.

B. *The Town is not exempt from the payment of overtime wages under 29 U.S.C. § 207(p)(1)*

▮ The Town claims an exemption from the payment of overtime, presumably pursuant to 29 U.S.C. § 207(p)(1), which provides:

> If an individual who is employed by a State, political subdivision of a State, or an interstate governmental agency in fire protection or law enforcement activities . . . and who, solely at such individual's option, agrees to be *employed on a special detail by a separate or independent employer* in . . . law enforcement, or related activities, the hours such individual was employed by such separate and independent employer should be excluded by the public agency employing such individual in the calculation of the hours for which the employee is entitled to overtime compensation under this section if the public agency -
>
> (A) requires that its employees engaged in fire protection, law enforcement, or security activities be hired by a separate and independent employer to perform the special detail,
>
> (B) facilitates the employment of such employees by a separate and independent employer, or
>
> (C) otherwise affects the condition of employment of such employees by a separate and independent employer.

*Id.* (Emphasis added). Department of Labor ("DOL") regulations provide a more specific interpretation of what "special detail work" encompasses. *See* 29 C.F.R. § 553.227(b); *see also Nolan v. City of Chicago*, 125 F.Supp.2d 324, 335 (N.D.Ill. 2000) (DOL regulations provide a more specific interpretation of what is encompassed by the exemption in § 207(p)(1)). 29 C.F.R. § 553.227(b), sets forth a two-part test to determine whether hours worked for another entity may be exempt under § 207(p)(1)'s "special detail work" exemption. The two prongs are "(1) the 'special detail' assignment must be undertaken and performed solely at the employee's option, and (2) the two employers

must be 'in fact separate and independent.'" 29 C.F.R. § 553.227(b); *see also Nolan*, 125 F.Supp.2d at 336; *Barajas v. Unified Government of Wyandotte County/Kansas City*, 87 F.Supp.2d 1201, 1205 (D.Kan.2000). If both prongs are satisfied, the exemption applies and the hours worked for the separate employers are not combined for purposes of assessing overtime compensation. *Nolan*, 125 F.Supp.2d at 336. Conversely, if both prongs are not met, no exemption applies and the hours must be combined to assess overtime compensation.

It is undisputed that each Officer's decision to work as a court security officer in Town Court is purely voluntary. Thus, we turn to the second prong of the analysis—whether employees of the Town Police Department and the Town Court are both employees of the Town, or whether there exists two "separate and independent" employers. "Whether two employers are in fact, separate and independent can only be determined on a case by case basis." 29 C.F.R. § 553.227(c).

The courts in *Nolan* and *Barajas* faced issues similar to those presented here, with one critical difference. In *Nolan*, Police Officers for the City of Chicago brought an action against the City under the FLSA alleging that the City failed to compensate the officers with overtime pay for the hours worked by the officers in a voluntary supplementary work program ("VSEP") under which the officers worked in a law enforcement capacity for the Chicago Housing Authority ("CHA") and the Chicago Transportation Authority ("CTA"). When the Chicago Police Officers volunteered to work in the VSEP for the CTA or the CHA, the Police Department approved their participation, the officers wore their Chicago police uniforms and were subject to the police department's rules and regulations, as the Town of Poughkeepsie's Officers do when they work as court security officers. However,

unlike the Town's Officers, the Chicago Police Officers were paid by means of a separate check, and were paid by monies from the separate and independent entities of the CTA and the CHA, not by the City of Chicago.

In *Barajas*, police officers sued the city/county under the FLSA for overtime compensation for extra hours spent patrolling public housing complexes managed by the City's Housing Authority. As in *Nolan*, the officers participating in the Housing Authority patrol assignment were required to wear their police uniforms, to drive marked police vehicles and to maintain a code of police conduct. The police officers were paid an hourly rate for their Housing Authority work, and these hours were not combined for overtime purposes with those hours spent performing their ordinary police duties. These officers were paid separately by the Housing Authority in a separate check, not by the county or city.

The district court in *Nolan* held that the hours worked by the Chicago Police Officers did not constitute overtime under the FLSA because, under 29 U.S.C. § 207(p)(1), the CTA and the CHA were "separate and independent" because the City did not control or provide for the fiscal needs of either Authority, as evidenced by the fact that both the CTA and the CHA had their own payrolls and separate funding sources. *See Nolan*, 125 F.Supp.2d at 335. The court held that since the CTA and the CHA had separate payrolls, budgets and retirement programs from the City, they were separate and independent from the City, the exemption in § 207(p)(1) applied, and the hours worked for the CTA and the CHA need not be combined with the hours worked for the City's Police Department.

In *Barajas*, the court denied defendant's motion for summary judgment on the issue

of whether the Housing Authority was "separate and independent" from the City/County because there remained factual issues regarding the financial control of the Housing Authority. *See Barajas*, 87 F.Supp.2d at 1209. Relying in part on two DOL opinion letters of July 1, 1993 and October 1985, the *Barajas* court set out several factors to consider in determining whether the Housing Authority was "separate and independent" from the City/County. *Barajas*, 87 F.Supp.2d at 1206. Among the factors were: (1) whether the agencies maintained separate payrolls; (2) whether the entities had arms-length dealings regarding employment; (3) whether the agencies had separate budgets; (4) whether the employees of the entities participate in separate retirement programs; (5) whether they are independent entities under state statute; and (6) whether they can both sue and be sued. *Id.* at 1206. In making its decision, the court emphasized the importance of financial considerations, explaining "the [b]udgetary control factor [is] highly relevant to the determination of whether two employers are in fact separate and independent for the purposes of § 207(p)(1)." *Nolan*, 125 F.Supp.2d at 337 (quoting *Barajas*, 87 F.Supp.2d at 1209).

In this case, the Officers are paid by the Town for both their police services and their court security services. The Town makes no independent financial considerations—it computes all of the hours worked by the Officers on the same payroll, and pays each Officer for his combined police and court hours on the same paycheck. The second factor of the test fails because there are no "separate and independent" employers here. As such, the § 207(p)(1) exemption for voluntary law enforcement duty does not apply.

The Town's main defense to the Officers' lawsuit is that, for the past 25 years, the Town and the Officers, and the Officers' organization (the PBA), allowed the court

security to be performed by police officers on a voluntary basis at a flat rate of $ 15.32 per hour for all time spent in performing court security. This rate of pay is allegedly the same rate of pay paid by private industries in the area for security work performed by Town of Poughkeepsie police officers when they are not on duty. The Town argues that the court security work should be compensated at the same level as off-duty private security work performed by the Officers. This may be a valid point as a matter of economics, but it avails the Town nothing here.

Although it is true that the Town's police officers have been serving as court security officers at a flat rate of pay for 25 years, this does not preclude them from now bringing this case under the FLSA. The FLSA was enacted to ensure that employees are fairly compensated. *See Capasso*, 198 F.Supp.2d at 458 (citing *Reich*, 45 F.3d 646). An employer cannot deny overtime compensation once it knows or has reason to know that an employee is working overtime—even if that employee fails to claim overtime hours. *See Holzapfel*, 145 F.3d at 524; *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir.1959) (Under the FLSA, a plaintiff's "agreement . . . not to claim overtime pay for the work here in question would be no defense to his later demanding it"). Thus, the fact that the Officers have been working for a flat non-overtime rate for 25 years is no bar to this action seeking overtime compensation.

For the reasons stated above, I find that the hours of work performed by the Officers as court security officers for the Town Court should be combined with the hours of work performed by the Officers as Police Officers for the Town Police Department in order to determine the Officers' overtime compensation. Thus, Plaintiffs'

motion for partial summary judgment as to liability is granted.

III. *Liquidated Damages Under the FLSA*

 Plaintiffs argue that they are entitled to liquidated damages under the FLSA pursuant to 29 U.S.C. § 216(b). Defendant claims that since its actions were not willful, the plaintiffs are not entitled to liquidated damages.

In addition to unpaid overtime, successful FLSA plaintiffs are also entitled to liquidated damages in the full amount of the unpaid overtime compensation. 29 U.S.C. § 216(b). Liquidated damages are compensatory, not punitive, and are designed to compensate employees for not receiving their lawful wages when due. *Marshall v. Brunner,* 668 F.2d 748 (3d Cir.1982); *Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943, 947 (2d Cir.1959). The statutory language is mandatory—liquidated damages "shall" be awarded. 29 U.S.C. § 216(b); *TWA v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Brock v. Superior Care, Inc.,* 840 F.2d 1054 (2d Cir.1988). Although the language is mandatory, the court has discretion to reduce the amount of liquidated damages, or to deny the award, if the defendant proves *both* that it acted in "good faith" *and* that it had objectively reasonable grounds for believing that the failure to pay overtime was not a violation of the FLSA. 29 U.S.C. § 216(b) and 260; *TWA v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523; *Brock v. Superior Care, Inc.,* 840 F.2d 1054. The employer's burden is "difficult" to meet—liquidated damages are the norm, not the exception. *Hellmers v. Town of Vestal, New York,* 969 F.Supp. 837, 848 (N.D.N.Y.1997) (citing *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir.1987)).

The Town argues that it "had absolutely no knowledge that by its various Town Boards and Supervisors over the years it was violating the Fair Labor Standards Act," Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, at 10, and thus the plaintiffs are not entitled to liquidated damages. I have no doubt that, until 1999, the Town was ignorant of its obligation to pay overtime. However, "Employer ignorance of the law is insufficient to establish good faith." *Hellmers,* 969 F.Supp. at 848. "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman v. RSR Security Services Ltd.,* 172 F.3d 132, 142 (2d Cir.1999) (citing *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 71 (2d Cir.1997)).

The Town has presented no evidence that it ever sought to discover whether the FLSA required it to pay overtime compensation to the Officers for the work· they performed as court security officers in the Town Court. There is no indication that the Town looked into the matter even after notice of the Officers' potential FLSA claim was sent to the Town Attorney in July 1999 and again in January 2000. The Town claims that the Town Attorney told only one Town Board member of this potential dispute, and this Town Board member didn't bring this matter to the attention of the entire Board. The failure of the Town to investigate this matter since the claim was made negates any inference of good faith. There was no "honest intention to ascertain what the Act requires to comply with it." *Id.*

Since the Town has failed to raise a genuine issue of material fact as to whether it met even the minimum good faith requirement of attempting to ascertain its compliance with the FLSA, I grant Plaintiffs' motion for summary judgment on the issue of liquidated damages. Once the

amount of unpaid overtime wages is decided, plaintiffs will be entitled to liquidated damages in that amount.

#### IV. *The Statute of Limitations and Willful Violations of the FLSA*

■ The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three year limitations period for "a cause of action arising out of a willful violation." 29 U.S.C. § 255(a); *Herman v. RSR Security Services Ltd.*, 172 F.3d at 141. Thus, in effect, if the Town is found to have willfully violated the FLSA, it will be liable for the pay violations for the past three years and not just the past two. *Id.* A finding of willfulness will be made if it is established "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McGlaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (adopting the standard from *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), a case brought under the ADEA); *Herman*, 172 F.3d at 141.

On July 12, 1999, Ronald G. Dunn, Esq., of the law firm of Gleason, Dunn, Walsh & O'Shea, on behalf of the Town of Poughkeepsie PBA, sent a letter to Frank E. Redl, Esq., Town Attorney for the Town of Poughkeepsie. This letter clearly set out the basis for the present legal action. Mr. Dunn stated that the PBA believed that under the FLSA, the Officers should receive pay for their work as court security officers at their regular rate of pay, and should receive overtime pay at a rate of one and one-half times their regular rate of pay for all overtime hours worked. This letter provided actual notice to the Town of the claim, and should have provoked an investigation into the merits of the claim. No evidence has been submitted that any such investigation ever occurred.

I find that the Town knew, at least since July 1999, that its payment of a flat rate of $15.32 to the Officers working in Town Court might be in violation of the FLSA, and showed reckless disregard by not investigating the matter. Since three years have passed (coincidentally, almost to the day) since the PBA informed the Town of its FLSA violation, I find that the Town either knew or "showed reckless disregard for the matter" of whether it was in violation of the FLSA. Thus, I find in favor of plaintiffs and set the appropriate statute of limitations under 29 U.S.C. § 255 at three years.

#### V. *Defendant's Motion to Amend its Answer*

■ The Town seeks permission to amend its Answer pursuant to Fed. R.Civ.P. 15(a), by adding certain defense and a claim for excess payment.

The decision to grant or deny a motion to amend a pleading lies within the sound discretion of the district court. *See Foman v. Davis*, 371 U.S. 178, 181, 83 S, Ct. 227, 9 L.Ed.2d 222 (1962); *Evans v. Syracuse City Sch. Distr.*, 704 F.2d 44, 47 (2d Cir.1983). Because a responsive pleading has already been served in this matter, and because Plaintiffs do not consent to the Town's amended Answer, the Town must obtain leave to amend from this Court. Fed.R.Civ.P. 15(a). Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." *Id.* However, the Court should deny leave when an amendment is offered in bad faith, would cause undue delay or prejudice, or would be futile. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001).

In its proposed Amended Answer, the Town seeks to add a Fifth, Sixth, Seventh,

Eighth, Ninth, Tenth and Eleventh Defense. All but the Seventh and the Eleventh Defenses address issues of liability. The Court has addressed all of the possible liability defenses—including those raised in the Town's proposed Amended Answer—and found in favor of the Plaintiffs. Therefore, these defenses—the Fifth, Sixth, Eighth, Ninth and Tenth Defenses are rendered futile, and the Town may not amend its Answer with them.

The Seventh Defense asserts that the Town is entitled to a credit for any amount paid in excess of the obligations set forth in the FLSA. The Town also seeks to amend its Counterclaim by adding paragraphs 33 through 39. These paragraphs essentially explain the Town's alleged right to a credit for overtime paid. The Town alleges that it was paying overtime wages at a far more generous rate than required by the FLSA, and that any amount of damages found to be due to the Officers should be offset by a credit for the amount previously overpaid to the Officers by the Town.

In their Opposition to the Town's Motion to Amend its Answer, the Plaintiffs "agree that the calculation of damages requires a week-by-week examination of precise payments made recalculating the 'appropriate rate' under the FLSA giving credit to the Town for certain payments made." Plaintiffs' Memorandum in Opposition, at 1. It is undeniable that certain contractual overtime payments are creditable towards a deficiency in FLSA overtime payments. 29 U.S.C. § 207(h)(2) ("Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this sections shall be creditable towards overtime compensation payable pursuant to this section.") Subsections (5), (6) and (7) provide for a credit in relevant part as follows:

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in the excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours or for other days; or

(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employee contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section), where such premium rate is not less than one and one-half the times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

29 U.S.C. § 207(e)(5)-(7).

Damages can not be determined at this stage. Since no calculation of damages has yet been submitted to this Court, granting the Town leave to amend its Answer to add its Seventh Defense and its additional Counterclaim will not cause prejudice or undue delay. There is also no indication that this leave to amend is sought in bad faith. Plaintiff may amend its Answer by adding its proposed Seventh

Defense and paragraphs 33 through 39 of its Counterclaim.

The proposed Eleventh Defense simply parrots the Answer's denials. It adds nothing. Leave to add a purely duplicative defense is denied.

Defendant is granted leave to amend its Answer insofar as it may add its proposed Seventh Defense (paragraphs 14–16), and paragraphs 33 through 39 of its proposed Counterclaim.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and Defendant's Motion for Leave To Amend its Answer is GRANTED IN PART and DENIED IN PART.

The parties should confer about the calculation of damages and then contact the Court no later than August 1, 2002, to discuss further proceedings.

This constitutes the decision of the Court.